# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

HAZEN M. PARKER *vs.* EMANUEL S. ST. MARTIN *et al.*

Argued by appellant, submitted on brief by respondents, Dec. 21, 1892.  Decided
April 7, 1893.

**Redemption by Judgment Creditor from Foreclosure Sale.**

    A subsequent lienholder cannot be deprived of his right to collect his
debt by redemption, to the extent of the value of the property over the
amount paid to redeem, by the interposition of the liens of fraudulent
and simulated securities.

**Measure of Damages of Such Creditor if Prevented by Fraud from
Redeeming.**

    But, if thereby prevented from redeeming, his damages would not ex-
ceed the amount of his debt.

**When Validity of Intervening Liens will not be Investigated.**

    In a case where a lien creditor redeems from a prior lienholder and re-
demptioner, and the property is ample security for all the liens, the court
will not, at the instance of such subsequent lienholder, undertake to in-
quire into the validity of, or the amount due on, prior liens in order to en-
hance the value of the property in the hands of the last redemptioner.

    Appeal by plaintiff, Hazen M. Parker, from an order of the Dis-
trict Court of Hennepin County, *Canty,* J., made May 19, 1892,
sustaining a demurrer to his complaint.

    The complaint stated these facts;   In 1881, Peter M. Peterson

owned the south half of the northeast quarter and lots two (2) and three (3) in section thirty (30,) and lot four (4) in section twenty-eight (28,) in township twenty-seven (27) range twenty-four (24) in Hennepin county. In that year Peterson and wife mortgaged all this land to the Northwestern Mutual Life Insurance Company. In 1884, Peterson died intestate, leaving his widow, Hilda, and four minor children, Albert, Anna, Esther, and John, his heirs at law. His estate was administered in the Probate Court of Hennepin County, and on May 1, 1886, the lands were distributed to his widow and children, but the mortgage debt was not proved or paid. On October 11, 1886, the defendant Emanuel S. St. Martin was by said Probate Court appointed general guardian of the persons and estate of the children, and he continued to act as such until April 1, 1890. The mortgage to the Insurance Company was then foreclosed in the District Court, and the land sold to the company in one parcel for the amount due on the mortgage and costs, and on January 26, 1889, the sale was confirmed. St. Martin obtained license on December 30, 1889, to sell the interest of the minors in the lands at private sale. On January 25, 1890, he sold to defendant Alfred E. Baillif, for $650, the interest of the minors in the southwest quarter of the northeast quarter and in lot three (3) in section thirty (30,) and their interest in lot four (4) in section twenty-eight (28,) and the sale was confirmed by the Probate Court, and a deed was made and re-corded. On the same day Baillif mortgaged this property to the defendant Walter S. McLeod for $1,500, due in one year, with interest, and McLeod filed notice of his intention to redeem from the foreclosure sale to the Insurance Company. Six judgments had meantime been recovered and docketed against the widow, and were a lien on her interest in the land. The judgment creditors all filed notices of intention to redeem. January 26, 1890, fell on Sunday. On the next day plaintiff recovered and docketed a judgment against the widow for $52.37 and filed notice of his intention to redeem. Neither the owners of the land nor either of the first six judgment creditors redeemed, but McLeod made affidavit of the amount due on his mortgage, and redeemed by paying the amount for which the land was sold at the foreclosure sale and interest and sheriff's fees, and

received a certificate of redemption. The plaintiff in due time on March 7, 1890, redeemed from McLeod, by paying the amount he had paid and $1,513.66 more, and all fees, and received a certificate of redemption and became the owner thereunder of all the lands mortgaged to the Insurance Company.

Two years thereafter, plaintiff discovered that St. Martin, Baillif and McLeod on January 25, 1890, formed a conspiracy to defraud whoever should redeem the land, and to obtain $1,500 from such re-demptioner. That the guardian's sale to Baillif, and the mortgage to McLeod, were without consideration, and were made in further-ance of the conspiracy and to compel any subsequent lienholder to pay the amount of that mortgage in addition to the debt to the In-surance Company, in order to redeem. Plaintiff further discovered that it was agreed among them that, in case the $1,500 should be thus obtained, St. Martin was to have $650 of the money, and the balance was to be equally divided between Baillif and McLeod; and that the money was in fact subsequently so divided among them. Plaintiff had, at the time, no notice or knowledge of these facts, and was thereby induced to, and did, pay $1,513,66 more than was due on all just and legal liens on the property, and was defrauded and damaged that amount, and he demanded judgment against the three conspirators for the $1,513.66, with interest and costs.

The defendants demurred, on the ground that the complaint did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer. The complaint nowhere stated the value of the land, or the amount of the mortgage to the Insurance Company. Another litigation regarding this property is reported in *Peterson* v. *Webber*, 46 Minn. 372. The facts there stated are at variance in some particulars with the allegations of the complaint now under examination.

*Hazen M. Parker, pro se.*

It is alleged and admitted that there was no debt to support the mortgage for $1,500. Therefore McLeod was not a creditor; and not being a creditor, he could have no lien, and nothing to assign to a subsequent redemptioner. In order to constitute a lien, there must

be the relation of debtor and creditor between the party holding the lien and the party against whom it is held. Furthermore, the indebtedness required to support a lien is an actual, valid and *bona fide* indebtedness. *Karnes* v. *Lloyd*, 52 Ill. 113; *Martin* v. *Judd*, 60 Ill. 78; *Arnold* v. *Gifford*, 62 Ill. 249.

The statute, 1878 G. S. ch. 81, § 16, gives each *bona fide* lien creditor who has properly filed a notice of intention to redeem, the *absolute right* to redeem by paying the amount of the *valid* claims against the property redeemed, or some part thereof. The law does not contemplate, and much less does it countenance spurious claims. The value of the property cannot cut any figure whatever. *Pamperin* v. *Scanlan*, 28 Minn. 345. It is alleged in the complaint that McLeod complied with all the provisions of the statute in making his redemption. This allegation is admitted by the demurrer. He produced to the officer the evidence of his lien, properly certified, and presented his affidavit of the amount then actually due thereon. The mortgage being regular on its face, and given by a party who had a right to make a mortgage, plaintiff had a right, not knowing anything to the contrary, to rely on its being a valid lien, and could not have been justified in refusing to pay it. He was compelled to pay it, in order to redeem and protect his own rights.

I have been unable to find any case where fraud has been attempted in the way adopted by these defendants. Fraudulent schemes are as multiform as human ingenuity can devise. The essential feature, is the attempt to deceive, by causing others to believe that things are different from what they really are, and to cause them to act on that mistaken belief to their injury. The form of the deception is wholly immaterial. A fraudulent act and an injury occasioned by that act, are the essential features. *Benzein* v. *Lenoir*, 1 Dev. Eq. 225; *Clifford* v. *Brooke*, 13 Vesey, 131; *New York & N. H. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Phelps* v. *Wait*, 30 N. Y. 78; *Eaton, C. & B. Co.* v. *Avery*, 83 N. Y. 31; *Wilson* v. *Green*, 25 Vt. 450; *Paddock* v. *Strobridge*, 29 Vt. 470; *Ballou* v. *Lucas*, 59 Iowa, 22; *Crown* v. *Carriger*, 66 Ala. 590; *Wilson* v. *Sykes*, 84 N. C. 213; *Denham* v. *Kirkpatrick*, 64 Ga. 71; *Bank of Woodland* v. *Hiatt*, 58 Cal. 234.

Has plaintiff any redress in the premises? He was compelled by the act of defendants to pay $1,513.66 more for the land redeemed, than the aggregate of all the valid claims against it. In other words, the defendants, without any legal right, have stepped in and placed a bogus mortgage on the property, and have sworn that it was a valid mortgage, and that there was a specific sum actually due thereon, and have thus taken from plaintiff this sum of money. In doing this they have committed a wrong, with intent to injure, and have injured plaintiff. That being the case, they must be accountable to plaintiff for that injury.

*James W. Lawrence,* for respondents.

Plaintiff finds fault that defendants so managed the minors' property that he was unable to take the same from them and their successors, upon a judgment of $52.37 against the widow, who happened to be a part owner, without paying anything for the minors' interests. He comes to this court with a claim inequitable and unjust upon its face.

Defendant St. Martin is sued as an individual, not as guardian. In selling the property he did so as guardian, under the direction of the Probate Court, which had exclusive jurisdiction. For the proceeds of the sale he cannot be called to account by plaintiff. Any surplus he received he also received for his wards. This action therefore cannot be sustained against St. Martin.

Baillif purchased from the guardian under the same proceedings and acquired a good title in fee. He therefore had a right to do with his property as he pleased, either deed or mortgage it or redeem the property as owner. Even if this were not so, yet if he did mortgage it without consideration, but the mortgagee afterwards paid him a portion of the consideration, he can retain and apply it. He therefore is not a proper defendant in this action, or responsible to plaintiff.

Defendant McLeod, being the successor as mortgagee to Baillif's recorded title, is entitled to his discharge, for the reasons given above. Plaintiff had no lien when defendant McLeod acquired his mortgage, and he had no right to interfere with him.

Defendants had the right to so manage the property of the minors as to prevent the plaintiff or any other person from taking it away from them without paying its full value. Plaintiff has no right to claim the minors' property had in it any debt paying power to him, he having a debt and lien only against the property of the widow.

VANDERBURGH, J. In 1884 one Peterson died seised of the lands described in the complaint, then subject to a mortgage thereon, previously executed by him to the Northwestern Mutual Life Insurance Company. He left him surviving, his wife, Hilda, and four minor children, to whom the land was assigned by the probate court, in the proportion of one third to the widow, and the remaining two thirds to the children, undivided.

The mortgage was afterwards foreclosed, and the year for redemption expired January 27, 1890. Prior to the foreclosure the defendant St. Martin was appointed guardian of the estate of the minor children, and on or about December 30, 1889, he obtained a license of the probate court to sell their interest in the land at private sale. It is further alleged in the complaint, and admitted by the demurrer, that on the 25th day of January, 1890, the three defendants conspired together to cause a mortgage to be made of the two-thirds interest of the minor children, alleged to be without consideration, but nominally for the sum of $1,500 and interest, which should be an apparent incumbrance thereon for that sum; the object being to practice a fraud upon subsequent lienholders who should redeem from such foreclosure sale, and thereby secure to themselves the amount of the consideration named in the mortgage in case such subsequent lienholders, or any of them, should redeem. To this end it was agreed between the defendants that St. Martin, acting as guardian, should sell the interest of the minor children to defendant Baillif under the probate license, and that the latter should execute the mortgage as above described, with note for same amount, to McLeod, without any consideration running from the latter. It was also agreed between them that Baillif should make no redemption, but McLeod should redeem by virtue of his mortgage, as a creditor having a lien, and that, in case any subsequent creditor having a lien should

redeem from him, then, from the redemption money paid him, to the amount of the mortgage, should be paid Baillif's purchase money for the land conveyed to him by the guardian's deed, ($650,) and the balance should be divided between the defendants. The guardian's report of sale was made and approved January 25, 1890, and the same day the deed was recorded, and also the mortgage to McLeod, who also, at the same time, filed notice of his intention to redeem; he being the fifth in order of redemption creditors. None of the owners of the land having redeemed, the creditors made redemption in their order. Subsequently to the execution of the mortgage, and on the 27th day of January, 1890, the plaintiff recovered a judgment against Hilda Peterson which on that day became a lien on her one-third interest in the land, and on the same day filed notice of intention to redeem. There were other redemption creditors subsequent to the mortgage, but having liens prior to that of plaintiff, so that plaintiff was the last redemption creditor, and the eighth in order. The amount of plaintiff's judgment was $52.37; but neither the value of the land nor the amount of the lien claims, save as above stated, appears. The plaintiff made final redemption, and in the amount paid was included the sum of $1,513.60, being the amount of the mortgage above referred to, and the interest thereon, as called for by the terms of the same; and the defendants, it is alleged, recovered the same of the redemption creditors entitled to redeem next in order to the mortgage, and applied and divided the proceeds as they had previously agreed to do, as above stated. The plaintiff had no notice of the fraudulent character of the mortgage, and was deceived thereby, and made redemption in reliance upon the record thereof as a valid lien. The plaintiff therefore claims that as the result of the alleged conspiracy, and the fraudulent conduct of the defendants, he was obliged to pay the amount of the mortgage in addition to what he was lawfully required to do in order to effect redemption; and he claims that he is entitled to recover the same of the defendants, on the ground that the mortgage was absolutely without consideration, and that McLeod was not in fact a creditor having a lien, entitled to redeem, but was a fraudulent redemptioner.

On the first impression, the case stated in the complaint seems very plausible, but upon a careful examination it will appear, we think, that it fails to make a case warranting a recovery by the plaintiff.    It omits any reference to some matters essential to be considered in order to a clear understanding of the case, but which cannot well be overlooked in the discussion.   In the absence of any allegation as to the value of the property, or the amount of the original mortgage and other liens, we may infer that it was sufficient to pay them all, including plaintiff's judgment, notwithstanding McLeod's intervening incumbrance.

Again, nothing is stated in respect to the understanding between the parties in the event that there should be no redemption from McLeod, and the title should finally rest in him, but it is proper to consider the legal relations and rights of the parties in that contingency.

The first and most essential condition of the contract was that McLeod should make the redemption and secure the title.   The stipulation as to the division of the profits depended upon a subsequent redemption from him.   The guardian's sale, mortgage, and redemption by McLeod were, according to the agreement, to be parts of one entire transaction.   It was a device or plan to secure a redemption.   It was doubtless also anticipated that other lienholders would redeem from McLeod, but if they had not done so the legal title would have passed to him; for there is no question that his redemption was effectual, as between the parties.   In that case McLeod would either be adjudged to hold the title as trustee, subject to an accounting for his advances, or he would be obliged to pay over the consideration of his mortgage.

The fact that no consideration money was paid to Baillif at the time did not necessarily make the mortgage without consideration, as between McLeod and the real beneficiaries, especially if, as we think may be inferred, the consideration for the guardian's sale was raised by, and was to come from, the McLeod mortgage, as a part of the transaction; and, since the redemptions have been made under and from it, it cannot be treated as wholly invalid, for the purposes of this case.

If the facts alleged are true, the parties may still be liable to account for the proceeds of the mortgage, as if actually advanced, on the application of the minors, if they have not voluntarily done so. If the consideration had been paid over at the date of its execution, its validity could not have been questioned by creditors, for the owner of property may incumber it; but the result would have been no different, as respects subsequent redeeming creditors. It is not alleged that the incumbrance was excessive. A subsequent lien creditor is entitled to his right to secure the amount of his debt by redemption, if the property is sufficient. He cannot lawfully be deprived of this right by the interposition of apparent and simulated, but spurious, incumbrances. What the exact form of remedy should be, in any particular case, it is not necessary to determine here. But if fraudulently prevented from redeeming, or his right to do so is seriously impaired, his damages would not exceed the amount of his debt and expenses necessarily incurred. The court will not consider the speculative or extra value of the land beyond this, or allow him the benefit of his bargain in addition to the recovery of his debt. In this case it does not appear that the incumbrance in question was void or excessive, or that the property is not amply sufficient to pay all the creditors, including this mortgage, or that the plaintiff would be willing to surrender the property, if fully reimbursed and his own debt paid.

The purpose of the statute, in providing for redemption by creditors, is to enable them to collect their debts out of the debtor's lands, to the extent of the value of the property over the amount paid to redeem; and when this is effected, and the redemptioner elects to take and keep the property, the object is attained.

We do not hold that a subsequent lienholder can be obliged to pay a debt which the debtor does not owe, and which is not a lien; but if he chooses to do so, and takes no steps to protect himself before redemption, but thereby collects his debt, it is difficult to see wherein he is damaged. He must investigate beforehand, and decide upon the course to pursue; otherwise the courts may be called on, in every case, to investigate the amount actually due on the

claims of prior redemptioners, or as to their validity, in order to increase the value of the estate finally purchased.

Order affirmed.

DICKINSON, J., did not participate in this decision.

(Opinion published 55 N. W. Rep. 113.)