## C. H. KENDRICK, Trustee, v. W. H. RYUS, Appellant.

**Division One, January 4, 1910.**

1. **MEASURE OF DAMAGES: Fraud and Deceit: Benefits.** The benefits of the bargain are a proper element of damages in cases *ex delicto* founded upon fraud and deceit. Where plaintiff leased a mine represented by the seller as being rich in ore, that it had not been previously worked but only developed, and that plaintiff could take out $1000 worth of ore per week for three years, plaintiff's damages, in an action for fraud and deceit, is not simply the difference between the price he paid and the actual value of the property received and retained by him, but is the difference between its actual value at the time of the lease and what its value would have been if the representations had been true.

2. ———: ———: **Evidence: Speculative.** Facts and circumstances so vague as to make the testimony as to values purely speculative are incompetent. But testimony that the lessor of a mine showed the lessee a drift which had been arranged specially to deceive, testimony to the effect that it was concealed from the lessee that the surrounding ore had been removed, and that he was told the ground had not been mined, when in fact it had; testimony that out of the space which had been left and which was shown to him he in a short time took out $1600 worth of ore, when he ran into old drifts which had been placed therein by the lessor's workmen; and testimony that the lessee was informed two other shafts which were not in condition to be inspected had been sunk to ore and there

stopped, but when the shafts were rearranged no ore was found therein, do not leave the evidence so veiled and vague as to value as to be speculative and valueless.

3. ———: ———: ———: **Opinion.** Representations that the ground had not been mined, that it had been prospected by digging shafts to the ore and then left, were not matters of opinion, but statements of fact; and, if the testimony, in the lessee's action for fraud and deceit against the lessor, tends to show they were made and were false, and that the lessee did not have information as to the exact condition and was unable to obtain it by examination, no demurrer to the evidence should be sustained.

4. ———: ———: **Instruction: Opinion: Representations.** Where the instruction for plaintiff by the use of the conjunction "and" required the jury to find that all the representations were made and all were false—those that were statements of fact, as well as the single one in reference to the extent of the area that was a representation .of opinion—the judgment will not be reversed because the instruction required them to find the one representation of opinion, if it were such, was made.

5. **INSTRUCTIONS: Opinion Evidence: No Request for Exclusion.** If defendant desired certain expressions of witnesses as to what could be made out of a mine per week and per year to be excluded as representations of opinions, he should have asked an instruction excluding them. This he did not do by asking an instruction in which are coupled with things that should have been withdrawn matters which should not have been withdrawn. In such case the instruction is properly refused.

6. ———: **Omission of Facts.** An instruction should be well founded upon the facts, and not leave out material admitted facts and should not peremptorily direct a verdict upon the finding of certain limited facts.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,.* Judge.

Affirmed.

*McIndoe & Thurman* for appellant.

(1)  The court erred in permitting Kendrick to testify what the mine would have been worth if as represented, and erred in permitting Lyman to testify

what the mine would have been worth if as represented. It was incompetent and the value was purely speculative. The value was fixed at $4,000, being the amount paid by plaintiff to appellant. Smith v. Bowles, 132 U. S. 125; 2 Greenleaf on Evidence, sec. 256; Carter v. Binnegar, 33 N. J. L. 515; Sigafus v. Porter, 179 U. S. P. 117; Rockefeller v. Merritt, 40 U. S. App. 666; High v. Barrett, 148 Pa. St. 261. (2) Instruction 3 told the jury that in estimating the damages they should allow the plaintiff the difference between the actual value of the property purchased and what the property would have been worth if as represented by the defendant. Said instruction was wrong as a matter of law and is reversible error. It permitted the recovery of speculative profits. This instruction was based upon the theory of plaintiff's petition. There was no limit on the damages, and it left the jury to guess and speculate on the amount. See authorities above. (3) The measure of damages in all cases is a question of law, and if the court undertakes to instruct the jury on the question, it must do so fully and properly. Kick v. Doerst, 45 Mo. App. 141; Schneuit v. Buggestradt, 8 Mo. App. 47; Matley v. Gregg, 19 Mo. App. 107; Williams v. Iron Co., 30 Mo. App. 662; Friend v. Railroad, 38 Mo. App. 94; Wilburn v. Railroad, 36 Mo. 302. (4) Instruction 3 was improper under the pleadings and the evidence in the case. The mine was sold for $4,000, and the instruction cannot be supported on the theory of the Missouri cases. The Missouri cases that apparently support this instruction are upon the doctrine of estoppel and where property had been exchanged at an agreed or fixed price. Caldwell v. Henry, 76 Mo. 254; Shinnebarger v. Sheldon, 41 Mo. App. 157; McBeth v. Craddock, 28 Mo. App. 397; Bank v. Byers, 139 Mo. 627. (5) The court should have sustained demurrer at the close of the plaintiff's evidence and should have given instruction 1 for the defendant at the close of all the evidence, because the plaintiff made an investi-

gation for himself and sought information from others, and the representations which plaintiff alleges defendant made were purely matters of opinion and cannot be the basis for an action in fraud. Brown v. South Joplin Lead & Zinc Co., 194 Mo. 681; Lewis v. Land Co., 124 Mo. 687; Farnsworth v. Duffner, 142 U. S. 33; Farrar v. Churchill, 135 U. S. 639; Anderson v. McPike, 86 Mo. 300; Bigelow on Fraud, secs. 172-490-491; Gordon v. Butler, 105 U. S. 556; Harrison v. Walden, 89 Mo. App. 171; Cornwall v. Real Estate Co., 150 Mo. 383; Wilson v. Jackson, 167 Mo. 153; U. S. Development Co. v. Silva, 125 U. S. 259; Stratton's Independent v. Dines, 126 Fed. 968.

*Thomas & Hackney* for respondent.

(1) The defendant's demurrer to the evidence was properly overruled. The testimony was ample to sustain the allegations in the petition to the effect that defendant had sold plaintiff a cut out mine, honeycombed with drifts at various levels from each of the shafts, and that all of the ore had been taken out by the defendant except a small bunch which defendant had left uncut to show a purchaser, and that this bunch of ore was surrounded by drifts. The defendant, with this knowledge, and knowing plaintiff's ignorance of the true condition of the ground, fraudulently represented to plaintiff that no drifts had been cut and that no ore had been taken out except such as was on the dump piles, and that the ground was virgin ground. When the plaintiff suggested the propriety of getting a mining expert to examine the ground the defendant dissuaded him from doing so, and induced him to take the property on the faith of the false representations made by the defendant. It's a clear case of positive and intentional fraud. (2) Instruction number three, given for plaintiff, correctly stated the law as to the measure of damages. In an action for damages for fraud and deceit the measure of damages is the differ-

ence in the actual value of the thing sold and what it
would have been worth had it been as represented. This
is the rule in Missouri, established by an unbroken line
of decisions. Langdon v. Green, 49 Mo. 363; Caldwell
v. Henry, 76 Mo. 254; Bank v. Byers, 139 Mo. 659;
Brownlee v. Hewitt, 1 Mo. App. 360; Shultz v. Christ-
man, 6 Mo. App. 338; Anslyn v. Frank, 8 Mo. App.
242; McBeth v. Craddock, 28 Mo. App. 380; Patton v.
Penquite, 32 Mo. App. 595; Shinnabarger v. Shelton,
41 Mo. App. 147; Hitchcock v. Baughan, 36 Mo. App.
216. This rule is adopted by the best text-writers on
this subject. 4 Sutherland on Damages (3 Ed.), sec.
1171, pp. 3400-3410; 3 Sedgwick on Damages (8 Ed.),
sec. 1027; 2 Sedgwick on Damages (8 Ed.), sec. 777;
1 Bigelow on Fraud (1888 Ed.), pp. 627-8; 14 Am. &
Eng. Ency. Law (2 Ed.), p. 182; Kerr on Fraud and
Mistake (2 Ed.), p. 410. This rule has long
been established and is supported by decisions in the
courts of last resort of a great majority of the states
of the Union. Foster v. Kennedy, 38 Ala. 359; May
v. Dyer, 57 Ark. 441; Ahrens v. Adler, 33 Cal. 608;
Herfort v. Cramer, 7 Colo. 483; Gustafson v. Ruste-
meyer, 70 Conn. 125; Williams v. McFadden, 23 Fla.
143; Gaulden v. Shehee, 24 Ga. 438; Estes v. Odom,
91 Ga. 600; McCrary v. Pritchard, 119 Ga. 876; Drew
v. Beall, 62 Ill. 164; Antle v. Sexton, 137 Ill. 410; Sang-
ster v. Prather, 34 Ind. 504; Nysewander v. Lowman
124 Ind. 584; Moberly v. Alexander, 19 Iowa 162;
White v. Smith, 54 Iowa 233; Speed v. Hollingsworth,
54 Kans. 436; Drake v. Holbrook, 66 S. W. (Ky.) 512;
Wright v. Roach, 57 Me. 600; Morse v. Hutchins, 102
Mass. 439; Nash v. Title Ins. & T. Co., 163 Mass. 574;
Page v. Wells, 37 Mich. 415; Jackson v. Armstrong,
50 Mich. 65; Totten v. Burhaus, 91 Mich. 496; Estell
v. Myers, 54 Miss. 174, 56 Miss. 800; Woolman v. Wist-
baugh, 22 Neb. 490; Lunn v. Shermer, 93 N. C. 164;
Noyes v. Blodgett, 58 N. H. 502; Crosland v. Hall, 33
N. J. Eq. 111; Van Epps v. Harrison, 5 Hill, 63;

Krumm v. Beach, 96 N. Y. 398; Ettlinger v. Weil, 184 N. Y. 179; Fargo Gas & Coke Co. v. Fargo Gas & Elec. Co., 4 N. D. 219; Linerode v. Rosmussen, 63 Ohio St. 545; Lukens v. Aiken, 174 Pa. St. 152; Beasley v. Swinton, 46 S. C. 426; Hogg v. Cardwell, 4 Sneed (Tenn.), 151; Hecht v. Metzler, 14 Utah, 408; Shanks v. Whitney, 66 Vt. 405; Krause v. Busaker, 105 Wis. 350. The contrary rule, laid down by the Supreme Court of the United States in Smith v. Bowles, 132 U. S. 125, limiting the recovery to the difference between the actual value and the price paid, has met with favor in but very few jurisdictions and is opposed by the text-writers. 4 Sutherland on Damages (3 Ed.), p. 3410; 2 Sedgwick on Damages (8 Ed.), sec. 781.

GRAVES, J.—This is an action for fraud and deceit in the sale of a lease on certain mining lots in Jasper county, Missouri. Plaintiff sues, as trustee, for himself and other parties interested with him in the deal. Defendant had acquired a previous lease on the premises, and afterward had acquired the fee interest in the land, so that at the time he was in position to make a lease to plaintiff. Defendant had been mining upon a portion of the lots in question, and had agreed to give one Roby a lease on the same for the price and sum of $4,000. With the lease, was to go certain mining machinery. Roby was to put up and did put up $500 and was given time to pay the remainder, which time was later extended. Defendant contends that he had no dealings with plaintiff, but that he sold the lease to Roby who in turn sold to plaintiff. The evidence is conflicting upon this point, Roby claiming that he put up the $500 as the price of an option on the lease, and that defendant understood that he, Roby, was going to get some other party or parties to take it. The final outcome was that defendant did execute a lease and bill of sale direct to C. H. Kendrick, Trustee, and Kendrick paid him $4,000 by check, and di-

rected Ryus to pay back to Roby the $500 put up by him, which was done by a check from Ryus.

Plaintiff charges that defendant falsely and fraudulently represented to him that the lots in question had not been previously mined; that in several of the shafts thereon he had struck good ore in developing them, but had not taken it out; that he, plaintiff, could take out $1000 per week for three years. Plaintiff went down into one shaft, the only one at the time which could be entered and found therein very rich ore; he then avers that he asked defendant if the vein had been cut or worked other than he then saw it, and was informed that it had not been; that as a matter of fact the defendant had caused the drift to be closed up so as to keep plaintiff from seeing that the drift where this pocket of rich ore was had cut into another drift; that defendant had caused the bottom of the drift to be covered with mineral to deceive him; that upon taking possession he afterward discovered that all these, as well as many other representations made by defendant were untrue; that he discovered that there was but a small pocket of rich ore, which was surrounded with drifts theretofore made, of all of which defendant had knowledge. The charges of false representations in the petition are so numerous that it would be a useless task to reiterate all of them. Suffice it to say that defendant by proper answer raised issue therewith, and the proof thereon is conflicting, plaintiff's proof tending to show not only that the alleged representations were made, but also the falsity thereof, and defendant's evidence tending to show that the representations were not made. There is evidence in the record upon which a verdict might have been found either way, but in our judgment the weight of the evidence seems to have been with the plaintiff. Plaintiff averred and proved that he expended $5000 on the lease before he discovered the fraud and deceit, and says that he netted from ore taken out about $1000. He also charges that

had the property been as represented it would have been of the value of $16,000, and prays for judgment in the sum of $19,000.

Defendant by answer denied all things in the petition averred. He also pleads that there was no privity of contract between him and plaintiff, but avers that he traded with Roby, and that Roby traded with plaintiff. And he then pleads that both Roby and plaintiff had knowledge of all the facts and conditions pertaining to the property before said lease was made. Verdict and judgment was for the plaintiff in the sum of $7,000 from which defendant has appealed. Alleged errors will be noted in their order.

I. Of prime importance is the challenge which defendant makes to the instruction on the measure of damages. For the plaintiff, the court instructed thus:

"If the jury find the issues for the plaintiff, then, in assessing plaintiff's damages, they should allow him the difference, if any, between the actual value of the property purchased by him from the defendant at the time of the purchase and what the said property would have been worth if it had been as represented by the defendant, the damages on such account not to exceed the sum of $15,000, together with such further sum, if any, as you may find from the evidence that the plaintiff necessarily expended in sinking shafts and drifting on said mining lots up to the time plaintiff discovered the falsity of said representations, if you find they were false, deducting from the amount of such expense the moneys received by the plaintiff from ore sales, less royalties paid, the damages on that account not to exceed the sum of $4,000; and the aggregate damages on the above accounts not to exceed the sum of $19,000."

Defendant contends that this instruction erroneously states the measure of plaintiff's damages. He contends that in actions for fraud and deceit the meas-

ure of damages is the difference between the price paid and the actual value of the property received.

It should be noted that the defendant was selling a ten-year lease, which is an interest in lands. By this lease the plaintiff, in addition to the contract price of $4000 for the lease, was to pay defendant a fixed royalty on the ore taken out from the premises. The $4000 was, therefore, the purchase price of the lease, as distinguished from the moneys to be paid and the things to be done under the lease, after its purchase and execution.

This action is not to rescind the contract, but an action *ex delicto* for damages sustained by reason of fraud and deceit used at the time the contract was made. Plaintiff was a stranger in the community and had at the time no knowledge of mining. Defendant was an experienced miner in Jasper county.

The cases are not all harmonious upon the question of the measure of damages in a case of fraud and deceit. The 14 Am. & Eng. Ency. Law (2 Ed.), p. 182, thus states the result of an examination of the cases: "In a number of cases it has been held that the proper measure of damages for false and fraudulent representations by the vendor of real or personal property, as to its value, quality, location, boundaries, etc., is the difference between the real value of the property and the price which the purchaser was induced by the fraud to pay therefor. This however is not the prevailing rule. . . . . By the great weight of authority, in ordi-. nary cases, the proper measure of damages in such a case, where the purchaser retains the property, is the difference between the actual value of the property at the time of the sale and what its value would have been if the representations had been true, for the purchaser is entitled to the full benefits of his bargain. This is clearly the more reasonable doctrine."

The one class of cases, of which Smith v. Bolles, 132 U. S. 125, is a representative case, fixes the meas-

ure of damages at the difference between the actual value of the property and the price paid, thus making no allowance for benefits in the bargain.

The other class of cases, of which Morse v. Hutchins, 102 Mass. 439, is an example, fixes the measure of damages at the difference between the actual value of the property at the date of the sale and the value of such property if it had been as represented, thus making allowance to the purchaser for the benefits of his bargain. So that the real distinction between the two lines of cases is, that one recognizes the purchaser's benefits in the bargain as an element of damages in an action for fraud and deceit, and the other does not. In other words, one line of cases gives to the purchaser only what he has actually parted with in the bargain, whilst the other line not only gives him that, but in addition gives him the benefits of his bargain, by permitting him to show what the property would have been worth had it been as represented.

For a discussion of the two lines of authority see the opinion of TORRANCE, J., in Gustafson v. Rustemeyer, 70 Conn. 125. The learned judge summarizes the difference thus: ''Both of these cases relate to sales of personal property, but no distinction is made, in the application of these rules, between sales of personal and sales of real property (Bigelow on Fraud, 627; Sedg. on Damages (2 Ed.), 559; 3 Sutherland on Damages, sec. 1171); and no good reason has yet been given why there should be any such distinction. Both courts, in the cases above mentioned, recognize the existence of the general rule that the defendant is only liable for such damages as are the natural and proximate result of his fraud, but they differ in applying it. In Morse v. Hutchins, the loss of the benefits of his bargain is regarded as one of the elements of plaintiff's damage resulting naturally and proximately from the fraud, while in Smith v. Bolles, such loss is not so regarded.''

Upon the argument of this case we were much impressed with the rule as announced in Smith v. Bolles, supra, but on examination of the cases, which are cited under the text above quoted from 14 Am. and Eng. Ency. Law (2 Ed.), p. 182, supra, we are forced to the conclusion that the great weight of authority is against the rule in the Smith-Bolles case. The cases seem to recognize that the benefits of the bargain are a proper element of damages in cases of fraud and deceit. The reason for this rule is thus stated by GRAY, J., in Morse v. Hutchins, 102 Mass. l. c. 440: "The rule of damages was rightly stated to the jury. It is now well settled that, in actions for deceit or breach of warranty, the measure of damages is the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be. This is the only rule which will give the purchaser adequate damages for not having the thing which the defendant undertook to sell him. To allow to the plaintiff (as the learned counsel for the defendant argued in this case) only the difference between the real value of the property and the price which he was induced to pay for it, would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the benefit of the wrongdoer; and, in proportion as the original price was low, would afford a protection to the party who had broken, at the expense of the party who was ready to abide by, the terms of the contract. The fact that the property sold was of such a character as to make it difficult to ascertain with exactness what its value would have been if it had conformed to the contract affords no reason for exempting the defendant from any part of the direct consequences of his fraud. And the value may be estimated as easily in this action as in an action against him for an entire refusal to perform his contract."

There is much soundness in this reasoning. But

for the fact that the purchaser thought he was getting
a bargain he might not have made the contract at all.
If by fraud and deceit he is induced to believe that he
is contracting for a benefit or a bargain, and not mere-
ly swapping dollars, why shouldn't the benefits of the
bargain be an element in the measure of damages in an
action for fraud and deceit?

Such benefit would be a matter fully contemplated
by both parties. By the purchaser, because as a rule
trades are not made for the purpose of merely ex-
changing dollars. By the seller, because he would not
falsely represent the character of the property save
and except to induce the purchaser to believe that he
was procuring a benefit or bargain. Being therefore a
matter fully contemplated by both parties, we are im-
pressed with the reasonableness of the rule which al-
lows the "benefits of the bargain" as a proper element
of damages in cases of fraud and deceit.

The Colorado court expresses the rule as succinct-
ly as any of the many cases. Following the trend of
the Massachusetts case, supra, that court, in Herfort
v. Cramer, 7 Colo. 1. c. 490, says: "If the property is
more valuable than the consideration named in the
contract, the profits of the bargain legitimately belong
to the purchaser. So, also, if the seller falsely and
fraudulently represents the property to be more valu-
able than it really is, and the purchaser is thereby de-
ceived and induced to enter into a contract of purchase,
he is entitled to the benefits which he would have de-
rived therefrom if the representations had been true."

Discussing the case of Parker v. St. Martin, 53
Minn. 1, which case denied "the benefit of the bargain"
as an element of damages in a fraud and deceit action,
Sutherland on Damages (3 Ed.), section 1172, com-
ments thus: "The general rule above stated is based
on the assumption that the amount paid is the meas-
ure of the value as fixed by the parties; but a purchaser

does not buy to sell again at the same price; and to compel him arbitrarily to accept compensation by that standard is to deprive him of such benefit of his purchase as the state of the market would have enabled him to realize if there had been no fraud. As said by Mr. Jutice GRAY, 'to allow the plaintiff only the difference between the real value of the property and the price which he was induced to pay for it would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the wrongdoer; and, in proportion as the original price was low, would afford a protection to the party who had broken, at the expense of the party who was ready to abide by, the terms of the contract.' The amount paid is evidence of the value, but on principle and according to the general course of decision, it is not conclusive of the value as it was represented to be.''

Along the same line is Sedgwick on Damages (8 Ed.), vol. 3, sec. 1027, where the author says: ''This seems to be the proper place for considering the measure of damages in actions for fraud committed in the course of a sale of land. In such actions, as in actions for fraud in the sale of chattels, it has usually been held that the measure of damages is the difference in value between the land as it would have been if as represented and as it actually was. Such difference in value must be estimated at the time of the sale.''

The same author, vol. 2, sec. 778, speaks of Smith v. Bolles, supra, as a departure from the rule. He says: ''In a recent case in the Supreme Court of the United States, however, that tribunal seems to have refused to follow this well-established rule.'' And further, after admitting that Smith v. Bolles accords with the English rule, the same author, in section 781, condemns the rule in this language:

''With this remarkable difference of authority on a point hitherto supposed to be well settled, we may be permitted to offer one or two suggestions. The

theory adopted in England and by the Supreme Court of the United States is that a totally different rule obtains if the plaintiff sues in contract from that which holds good if he sues in tort; that in a suit upon a warranty that an article corresponds with representations, he gets the benefit of his contract; while in a suit for the fraud committed he gets back only the money paid out. Such a result is objectionable, since it introduces two different rules for the same state of facts, dependent solely on the question whether the action sounds in tort or contract; while, as we have often seen, the general principle is, that the rules of compensation are the same in tort and contract, in all cases where the measure of damages is loss of or injury to property rights.

"But besides this, the tort may be one of a peculiar character. The decisions just cited treat it as merely a tort by means of which the plaintiff is induced to part with his money, or to exchange his money for the thing bought. But is this always the fact? It may be a fraudulent warranty which induces the plaintiff to enter into a contract to purchase, not what he gets, but something totally different. What is the natural and proximate loss in such a case? Not the loss of his money, but the loss of the thing he was induced to believe he had got. He does not seek to recover the benefit of a bargain on a contractual ground, but the benefit of a bargain which the defendant has fraudulently destroyed.

"Suppose that such a warranty were made by one person and the fraud committed by another. This is, suppose that A. sells to B. with a warranty, and that C. with knowledge of the facts, by a fraud destroys the value of the warranty. In a suit by B. against C., surely the plaintiff could not be restricted to the recovery of the money he had lost, because he was obliged to sue in tort. But the supposed case is far less strong than the one we have supposed, for in that A., who sells

with warranty, and C., who commits the fraud, are one and the same person."

Our own courts seem to be against the doctrine of Smith v. Bolles. In Caldwell v. Henry, 76 Mo. l. c. 257, the following instruction met the approval of this court: "You are further instructed that should you find for plaintiff, the measure of damages is such sum or amount as you may, from the evidence, believe was the difference between the actual value of said land at the time it was conveyed to plaintiff and what would have been its value at the time, had it been in point of quality, condition and location as represented by defendant, not exceeding the amount claimed in the petition; and if you find for plaintiff, you may allow her interest on the amount you may find for her, from the time of the commencement of this action." It is true the court did not discuss the rule, as both sides seem to have proceeded on the theory that such was the proper rule of damages.

In Bank v. Byers, 139 Mo. l. c. 659, we said: "In such circumstances the measure of damages was the difference between the bonds if they had been as represented upon their face, and their value with the prior incumbrance on the lands of the company. [1 Bigelow on Fraud (1888 Ed.), pp. 627 and 628; Caldwell v. Henry, 76 Mo. 254.] Plaintiff's tenth, and defendant's third instruction, with respect to this branch of the case, are in accordance with the rule herein announced and contain a correct presentation of the law upon the measure of damages."

In the Byers case there was involved the value of some second mortgage bonds. On their face the bonds purported to be first mortgage bonds. This statement in the face of the bond was the false representation. This court thus held that the proper measure of damages was the difference between the actual value and the value they would have had if they had been up to the standard fixed by the false representations.

Shinnabarger v. Shelton, 41 Mo. App. 147, and other opinions of the Courts of Appeals are to the same effect.

In this case there were representations shown by plaintiff's evidence, as to the existence of ore beds in the ground covered by the lease, which, had the representations been true, would have made this ten-year lease exceedingly valuable. We care not whether the thing purchased be land, and interest in land, or personal property, the measure of damages is the same in actions for fraud and deceit. The sale of this ten-year lease on these lots was the sale of a valuable interest in land, and we are of opinion that the instruction challenged by defendant, in so far as it announces that the difference between the actual value of the lease at the time and the value of the said lease had the representations been true, is proper. In other words, we are of opinion that "the benefits of the bargain" are a proper element of damages in cases *ex delicto* founded upon fraud and deceit.

II. It is also urged that the evidence upon what the lease would have been worth had the property been as represented was erroneously admitted (1) because it was incompetent and (2) because speculative.

Under our views expressed in the preceding paragraph evidence of a proper character tending to show the value of the lease at the time of its purchase had the property been as represented, is proper. As to the second objection urged, we can see where the facts and circumstances might be so vague as to make the testimony purely speculative, in which event we think it would be incompetent, but we do not think that the circumstances are so vague in this case. Plaintiff was shown a drift which, according to the testimony on his side of the case, had been arranged specially to deceive him. The fact that the surrounding ore, if any, had been cut out, was concealed from him. He was told

that the ground had not been mined, when in fact it had been mined.

This shaft made a fine showing of ore, and out of the space which had been left therein, the plaintiff in a very short time took $1600 worth of ore, when he ran into old drifts, which had been placed therein by defendant's workmen. Whether there was ore in these old drifts and the same had been taken out is really immaterial, because if there was no ore where these drifts were run, then it became material for plaintiff to know that drifts had been cut near that place, so that he might by inquiry or otherwise, inform himself as to the character of these drifts.

He was informed, however, that the ground had never been cut, and a practical miner of that section could give a fair idea of what a lease would be worth with such ore in sight as was shown to plaintiff. In two other shafts which were not in condition to be inspected, plaintiff was informed that the shafts had been sunk to ore and there stopped, but when plaintiff rearranged these shafts he found no ore therein. With a large quantity of ore in sight at the one place on two small mining lots, and with the statement that ore had been struck in two or more other shafts nearby, it does not leave the facts so veiled as to make the evidence as to value, had the representations been true, so speculative as to be valueless or improper. This contention is therefore ruled against the defendant.

III. It is urged that a demurrer to plaintiff's evidence should have been sustained on the ground, as stated in the brief, ''because the plaintiff made an investigation for himself and sought information from others and the representations which plaintiff alleges defendant made were purely matters of opinion and cannot be the basis for an action in fraud.''

We have heretofore indicated that many of the misrepresentations were as to existing facts, i. e., that

the ground had not been mined; that the ground had been prospected by digging shafts to the ore and then left. Such things are not matters of opinion but statements of facts. Plaintiff testified that defendant told him, speaking of the surrounding shafts, "Every one of those have been put down in ore and never taken out any, simply put down in there to develop the ground and with a view of selling it, the same as you was in."

The evidence discloses that plaintiff was only able to examine the one shaft and the weight of the evidence is that he did not have information as to the exact conditions. What information he got was that from defendant, which at least by part of the evidence is shown to be false.

Under these circumstances the demurrer was properly overruled.

IV. Defendant urges error in the giving of instruction numbered 1 for the plaintiff. The objection is couched in this language: "That part of instruction No. 1 given for respondent which authorizes a recovery if appellant falsely represented that the body of ore extended within the area of the shafts on the lots sold, is material and reversible error."

The part of the instruction thus complained of reads: "and if you further find that the defendant falsely and fraudulently for the purpose of inducing plaintiff to accept said offer, did then and there state to the plaintiff that the ore body opened up and exhibited to the plaintiff in said drift did extend over the area of ground embraced by the shafts theretofore sunk on said land as aforesaid,"

The instruction after the punctuation mark above indicated then further proceeds; "and that no drifts had been cut on said lots excepting the said drift then showed by the defendant to the plaintiff, that nothing had been taken out of the ground excepting in sink-

ing the shafts, except the ore on the dump pile at said 35-foot shaft, that he caused said shafts to be sunk into ore and then stopped the work therein; that none of the ores in said ground had been taken out by drifts, and that there was a similar run of ore at a lower level; and if you further find and believe from the evidence that the plaintiff believed said representations and relied upon the same as being true and was deceived thereby and was thereby induced to and did purchase the said property so offered by the defendant as aforesaid for sale, and did pay the defendant $4,000 therefor and did receive from the defendant the mining lease read in evidence, and that afterwards the plaintiff, relying upon said representations as being true and believing them to be true and being deceived thereby, entered into the possession of the mining lots described in said lease and expended and invested money therein in the development of said lots; and if you further find said representations were false and were known by the defendant to be false when he made the same, if you find he made such representations, then you will find the issues for the plaintiff."

The instruction is very long and we have quoted only so much thereof as will serve to illustrate our views. In presenting the things which the jury must find before it could return a verdict for the plaintiff, each thing is placed in a clause of the instruction followed by a comma as the punctuation mark, and all these numerous clauses are connected with the word "and," as indicated by the quoted portion of the instruction. There are other portions along the same line preceding the quoted portion. Throughout the word "and" is used and at no place is the disjunctive "or" used. So that even if it be conceded that the statement to the effect that the body of ore extended all over the land, was the mere expression of opinion, and therefore not actionable, yet the jury could not find for the plaintiff under this instruction without

finding the other things mentioned which were state-
ments of facts, shown to be false. Had the instruc-
tion used the disjunctive "or" rather than the connec-
tive "and," and if the facts in evidence would have
justified the conclusion that the statement was a mere
opinion, then there might be substance in defendant's
contention. For in that event the finding by the jury
that this one statement was false would have author-
ized a verdict. But such is not the instruction. As
it is written it forced the jury to find that all the sev-
eral representations were made and further that all
were false. It is extremely doubtful, when all the state-
ments of Ryus with reference to his prospecting the
ground and what he had found in the different shafts
are taken with this expression, as to whether or not
the censured expression is not something more than
a mere opinion. But we do not pass upon this question
in view of the other conditions. The case should not
be reversed for this reason.

V. Defendant further urges: "It was reversible
error not to give instruction asked by appellant on
opinion statements made by appellant to respondent
regarding value of mine and what it would produce
in future and what it was worth based on its best
productiveness."

There are certain expressions of opinion as to
what could be made out of such mine per week and
per year which perhaps should be denominated mere
expressions of opinion. These were not submitted to
the jury by plaintiff's instruction except as stated in
the preceding paragraph and came out only in evidence
in the course of detailing the several conversations.
They no doubt should have been withdrawn from the
jury or at least the jury should have been informed
that such did not give a right of action. Defendant
by several instructions undertook to do this, but in each
instance coupled with the thing which should have been

withdrawn by instruction, matters which should not have been withdrawn. The instructions as asked were properly refused. Had they been limited to those matters purely of opinion one or two of them should have been given.

VI. Lastly the defendant claims that his instruction numbered 5, refused by the court, should have been given. This instruction reads:

"The court instructs the jury that if you find and believe from the evidence that the defendant made a bill of sale and executed a lease to R. L. Robie, and placed the same in the Joplin National Bank, and that the said Robie had paid the defendant $500 on the purchase price and gave the said Robie to the 15th of May, 1905, to pay therefor, and that prior to the said placing of said lease in said bank the defendant had made no misrepresentations as to said mine to the said Robie and at the request of plaintiff said Robie secured an extension of time for the taking of said property for Robie and plaintiff to pay the balance of the consideration, and that in pursuance of said agreement the plaintiff purchased said property you will find for the defendant."

The trouble with this instruction is that it is not well founded upon the facts, and leaves out of consideration too many of the admitted facts, and yet upon the finding of the certain limited facts peremptorily directs a verdict for the defendant. That Ryus exhibited this mine to plaintiff is thoroughly shown; that he made statements concerning the same to plaintiff is undisputed; that plaintiff paid him the full price thereof is undisputed; that out of this price he repaid Roby his $500 is undisputed; that the Roby lease and bill of sale was never delivered and made effective is undisputed. Under these circumstances there was no error in refusing this instruction.

State ex rel. v. Foster.

Upon the whole it appears that this cause has been fairly tried and the judgment should be affirmed. It is so ordered.

All concur.