James **DEMPSEY**, Appellant,

v.

Joe **MARSHALL**, Appellee.

Court of Appeals of Kentucky.

March 17, 1961.

James F. Clay, Danville, for appellant.

Jackson Guerrant, Danville, for appellee.

MOREMEN, Judge.

Appellant, James Dempsey, leased the Town Theater in Danville from appellee, Joe Marshall, on April 13, 1956, for a term of six years at a monthly rental of $350.

Appellant was induced to execute this lease by representations of appellee that he had operated the theater since 1952, and had made an annual net profit from the business for the years 1952, 1953, and 1954 of between $10,000 and $17,000. He supported these representations by exhibiting to appellant copies of his federal income tax returns for the years mentioned. He stated to appellant that his tax return for the year 1955 was not available but that his figures for 1955 and part of the year 1956 were such that if appellant operated the business he would realize a net profit for himself of $5,000 after paying the rent of $4,200 a year. The proof shows that appellant relied upon these representations but soon discovered, after he took over the theater, that they were false. He found a ledger at the theater which disclosed the amount of daily receipts when appellee operated it. By a formula known to theater operators· he determined from the ledger that the figures given him by Marshall were untrue. Proof adduced by an accountant at the trial showed that Marshall's net profit for 1955 was $2,525.11 and that the income for 1956 was lower even than that for 1955.

Dempsey paid about three months' rent after he took possession of the theater but around the first of July 1957, he had become delinquent in payment for eleven months' rental in the sum of $3,850. At this time a settlement or compromise appears to have been reached—perhaps even a novation of the contract—and by agreement appellant began to pay the sum of $250 instead of $350 per month as rent. At the time the rent was reduced there was no agreement between the parties as to whether Dempsey would or would not be required to pay the accrued rental of $3,-850.

Appellee brought this suit to recover the rental at the contract figure of $350 per month for the eleven months when no rental was paid. Appellant counterclaimed for damages resulting from the fraud which had been practiced upon him.

When all the evidence had been introduced the trial court instructed the jury to find for appellee Marshall on his claim in the amount of $3,850; it further instructed the jury to make a determination of whether Marshall had made fraudulent statements at the time the lease was executed, and if he had and appellant had relied upon them, they should find for appellant Dempsey on his counterclaim; and further instructed as follows:

"If you find for Dempsey on his counterclaim, you should award him such sum as you believe from the evidence to be the difference, if you from the evidence believe there is a difference between the fair reasonable monthly rent for such Theater at the time Dempsey leased it, provided Marshall had realized such annual net profits from its operation for the years named in instruction 2, and its fair reasonable monthly rent at the time of this lease to Dempsey taking into consideration what you believe from the evidence to have been the net profits realized by Marshall from the operation of the Theater for those years, your finding under this instruction not to be for greater time than 11 months, nor greater amount than $1971.86, the amount claimed by Dempsey."

■ Appellant contends that the instruction was erroneous in that it denied to him the right to recover for losses he sustained up to the time the operation began to show a profit in 1958. The matter of application of a proper rule of damages from fraudulent representations which induced a contract has long been a troublesome one and the courts of the country are divided in opinion. The majority, however, seems to have accepted what is known as the

"benefit of bargain" rule instead of one which is designated as "out of pocket." Our state has adopted the majority rule. Pedigo v. Bybee, Ky., 253 S.W.2d 21; Larue v. Barbee, 184 Ky. 354, 212 S.W. 142; and Campbell v. Hillman, 15 B.Mon., 508. As was said in Kendrick v. Ryus, 225 Mo. 150, 123 S.W. 937:

"The real distinction between the two lines of cases is that one recognizes the purchaser's benefits in the bargain as an element of damages in an action for fraud and deceit, and the other does not. In other words, one line of cases gives to the purchaser only what he has actually parted with in the bargain, whilst the other line not only gives him that, but in addition, gives him the benefits of his bargain, by permitting him to show what the property would have been worth had it been as represented." Kendrick v. Ryus, 1910, 225 Mo. 150, 123 S.W. 937, 939, 135 Am.St.Rep. 585.

The difficulty lies more in application than in definition. Many of the cases decisive of this matter have involved the actual sale of a commodity, a stock, a business and other things in the same category, or representations as to the identity or location of property or encumbrances on it. Recoveries have been allowed in connection with representations as to rents or profits from property or business. In such cases the measure is generally held to be the difference between the actual and the represented value of the business or property. 124 A.L.R. 80.

In this case we have no such clear-cut transaction because the record does not offer details which might be enlightening. At first approach we generally assume that only an outright lease is under consideration, but one gathers from the testimony of the parties that more than that is involved.

The consummated deal appears to be hybrid. One part is the building and equipment. The other is the business—with an-

ticipated profit—in which the realty and the facilities might be used. The peculiar structure of the building, and the highly specialized nature of the facilities, together with the conversations and representations about profits had during the negotiations before the lease was executed, direct us to the opinion that this is not a simple lease of real estate. It is a "lease" of a business, and if Dempsey had leased this business relying on fraudulent statements reasonably conducing anticipation of future profits, under our rule he should be permitted recovery.

The trial court was correct in treating the testimony in this case as showing that a novation took place in July 1957. Though the language of the parties in describing this event is vague, the only conclusion we believe may properly be deduced from it is that they reached an accord on that date, and differences as to the amount to be paid under the lease were settled.

Under the instruction above quoted the lease was treated as if it were only an outright conveyance of an interest in land for a definite period and at the same time it gave credit for what presumably was an actual loss during the period involved. It failed to give Dempsey the benefit of profits he might have earned had the condition of the business been such as was represented.

During the fourteen month period involved Dempsey had suffered a loss and if one takes as true the representations of Marshall, then Dempsey should have earned about $416.66 per month during this period. So, if he is permitted to recover under the theory that had such representations been true, he would have earned that much a month, he is entitled to an instruction which permits the jury to find that sum.

■ We believe that under the unusual fact situation in this case, it would be sufficient if each party's theory were submitted under separate instructions. One instruction would say in effect that if the jury believed that Marshall had not misrepresented the situation as to past profits, and thus encouraged Dempsey to accept the lease in anticipation of future profits, then the jury should find for him in the sum of $3,850, the amount due in rental. The next instruction should give the opportunity for the jury to find for Dempsey in the approximate sum of $416.66 for each of the fourteen months before the novation, plus his actual loss for each month during that period and thereby he would be permitted to recover profits under the representations made—if they were made.

We believe instructions along the lines indicated may achieve a fairer solution of the case than those which were given.

Judgment reversed.