FIRST NATIONAL BANK OF KANSAS CITY, MISSOURI, and ARTHUR MAG, Executors and Trustees under the Last Will and Testament of LETTIE B. MCILVAIN, Deceased, Plaintiffs-Respondents, v. JAMES KAVORINOS, d/b/a RINOR'S CAFE, Defendant-Appellant, No. 43852—270 S. W. (2d) 23.

Cout en Banc, July 12, 1954.

948

*Marion D. Waltner* and *Edwin M. Bramson* for appellant; *Clarence C. Chilcott* of counsel.

*Landry Harwood* for respondents; *Meredith & Harwood* of counsel.

HYDE, J.—This is an unlawful detainer action to recover possession of premises, located at 3924 Main Street in Kansas City, commenced before a Justice of the Peace, November 3, 1945. Plaintiffs' executors and trustees were substituted for the original plaintiff, Lettie B. McIlvain, now deceased. Plaintiffs had judgment for $11,000.00 for unlawful detention from November 1, 1945 to July 1, 1949, the verdict of the jury finding the monthly rental value to be $125.00. Defendant has appealed.

This is the third time this case has been before the Court en Banc. (McIlvain v. Kavorinos, 358 Mo. 1153, 219 S. W. (2d) 349; McIlvain v. Kavorinos, 361 Mo. 749, 236 S. W. (2d) 322). Prior to that it was twice before the Kansas City Court of Appeals. (McIlvain v. Kavorinos, 202 S. W. (2d) 103; McIlvain v. Kavorinos, 212 S. W. (2d) 85.) The judgment in this case is in the same amount ($11,000.00) as that in the last appeal. The judgments in the first two appeals did not cover the entire 44 months period of unlawful detention now claimed. The facts have been fully stated in the former opinions and those now material will be later referred to herein. Defendant admitted that he had only a month to month tenancy under an oral rental agreement. (See Sec. 441.060, all statutory references are to RSMo. and V.A.M.S.) Defendant's first allegation of error is: "The Court erred in rendering judgment for the respondent as the tenancy of appellant had never been lawfully terminated (A) because there was no evidence that the notice was served not less than one month from the next rent day (B) because the contents of the notice were wholly insufficient to terminate appellant's tenancy." As to the notice, which is set out in the opinion of the Court of Appeals on the first appeal herein (202 S. W. (2d), l.c. 104) we hold that it was sufficient for the reasons stated in that opinion.

As to the notice being served one month before the next rent day, we think there was no real issue as to the rent ▮▮▮ being payable on the first day of each month and, if there was, that it was a reasonable inference from the evidence that the rent was payable on the first day of each month. (Instructions required the jury to so find.) In the first place, defendant answered pre-trial interrogatories which, among other things, required him to state: "(a) whether rent was payable on a month to month basis, and (b) whether it was due on the first day of each calendar month"; and defendant's answers were: "(a) Rent was payable on a month to month basis, (b) I have no independent recollection as to its due date." Thus defendant did not claim the rent was due on any other day than the first day of the month. Furthermore, on cross-examination, defendant tesified as follows: "Q. Did your lawyer advise you that

the owner of this property, Lettie B. McIlvain, as long as you were only a month to month tenant and had no lease, had the right to get you out provided they served you thirty days before the beginning? A. Yes. * * * Q. You knew that requirement was in there of thirty days' notice before the beginning of the preceding month from November? You knew that? A. Yes, sir, I did. * * * Q. You then admit, as I understand you, that $85.00 a month on your rent was due for those months, is that right? A. Up to that month there was just $65.00, then he raised to $85.00. Q. Excuse me, what month? A. There was about two months before that all this came up Dwyer raised it to $85.00. Q. Before November 1, 1945? A. Yes. * * * Q. You actually got an acceptance of the rent up to November 1, 1945? That is right? A. That is right.'' (Defendant's real reason for refusing to vacate was that a lease of the premises had been made to a business competitor.) The owner's rental agent Dwyer testified: ''Q. And by the first of November they were paying $85.00, is that right? A. Yes. I looked at my records on that, it started at $50.00, then after a couple of years it went to $60.00, then to $65.00, then $85.00 at the time of November 1, 1945.'' He also said he did not collect any rent from defendant after October 1945; that he didn't wait to give him thirty days notice but gave him more than forty-five days; and that he ''didn't want to wait until the last day of the month and force them to move sooner'' but thought he ''was doing a favor to Mr. Kavorinos to give him those extra two weeks.'' On the last appeal, on substantially similar evidence, we said the evidence ''tended to show that in 1941 plaintiff's real estate Agent, Harry J. Dwyer, rented this property at 3924 Main Street to defendant James Kavorinos on a month to month basis for $50 per month, with rent due the first of each month.'' (236 S. W. (2d), l.c. 324.) We adhere to that ruling and hold that defendant's tenancy was lawfully terminated November 1, 1945.

Defendant's next allegation of error is that the Court erred in rendering judgment because there was no proper party plaintiff. Defendant says that the substitution made by order of this Court in 1951, after Mrs. McIlvain died September 2, 1950, was only for the purpose of that appeal under Secs. 507.100 and 511.540 and Rule 3.08(a); and that substitution was required under Secs. 534.260 and 534.270, applicable to unlawful detainer, before plaintiffs could be authorized to proceed in the Circuit Court. Defendant also says no substitution for the original plaintiff could have been made after the last appeal because it would have been more than one year after her death (Sec. 507.100 (3)); and because her executors were not in charge of the lands involved since plaintiff had sold and conveyed the property before her death. (Secs. 534.260 and 534.270.) There is no merit in these contentions, Secs. 534.260 and 534.270 are not substitution statutes (applicable to pending actions commenced

by the owner during his lifetime) but instead authorize heirs, devisees, grantees, assignees and executors and administrators in charge of lands to commence actions as original plaintiffs after the death of the owner (who made the lease) or after conveyance by him. (See Ray v. Blackman, 120 Mo. App. 497, 97 S. W. 212.) Similar contentions were made in this Court on the last appeal by defendant in opposing substitution at that time under Sec. 507.100 and were ruled against him. (236 S. W. (2d), l.c. 325.) We hold that the order of substitution made in this Court at that time authorized the executors and trustee to continue as plaintiffs until the case was finally determined.

■ Defendant also alleges error on the ground that no judgment could be rendered against him after the property had been sold by Mrs. McIlvain. Defendant argues that a money judgment in unlawful detainer must have a judgment for possession to support it (citing Farwell v. Easton, 63 Mo. 446; McKinney v. Harral, 36 Mo. App. 337; Welden v. Myers, 212 Mo. App. 479, 253 S. W. 1086; Shull v. Hatfield, 240 Mo. App. 275, 202 S. W. (2d) 916); and says that, after Mrs. McIlvain conveyed the property, the relation of landlord and tenant did not exist; that neither she nor her executors were thereafter entitled to possession; and that defendant was not unlawfully detaining possession from her or them. Therefore, defendant says that the sale of the premises by Mrs. McIlvain and his attornment to the purchaser (more than a year after the sale) is a complete defense, citing Furguson and Brock to the Use of Ham v. Lewis, 27 Mo. 249; Orrick v. St. Louis Public Schools, 32 Mo. 315; Pentz v. Kuester, 41 Mo. 447; May v. Luckett, 48 Mo. 472; Gunn v. Sinclair, 52 Mo. 327; Kingman v. Abington, 56 Mo. 46; Logan v. Woolwine, 56 Mo. App. 453; Loan v. Smith, 76 Mo. App. 510; Jennings v. Robinson, 82 Mo. App. 544; Forder v. Handlan, 155 Mo. App. 453, 134 S. W. 1110; Prendergast v. Graverman, 166 Mo. App. 33, 147 S. W. 1094; Aubuchon v. Foster, 202 Mo. App. 225, 215 S. W. 781; Howes v. Muir, (Mo. App.), 226 S. W. 610; Bess v Griffin, (Mo. App.), 234 S. W. (2d) 978. However, in none of these cases was the suit brought (as in this case) at a time when the plaintiff was the owner of the property and the landlord of the defendant and was entitled to possession at the time the suit was commenced and for several years thereafter. Of course, as in some of them, where the plaintiff had parted with his title and turned over his possession or given up right thereto before bringing suit, the action could not be maintained. Likewise, in some of the cases cited, the suit was improperly brought against a defendant who was not in possession of the property.

However, it has been held that a lessor, who has conveyed his land before the expiration of the term, could maintain unlawful detainer where there was an agreement between the lessor and his vendee that the lessor should oust his lessee if he failed or refused to vacate the

premises at the end of his term. (Logan v. Woolwine, 56 Mo. App. 453; Tucker v. McClenney, 103 Mo. App. 318, 77 S. W. 151.) There was such an agreement between Mrs. McIlvain and her vendee as to continuing this suit (then pending for more than three years) for that purpose. Furthermore, it is said that, in such an action, "the right to judgment depends on the facts as they existed at the time of the commencement of the action, and not at the time of the trial." (22 Am. Jur. 942, Sec. 46.) That principle may have exceptions but it should certainly apply here, where Mrs. McIlvain was entitled to possession, when she brought this action and during all the time thereafter until she sold the property, and defendant was unlawfully withholding possession from her without any right whatever. Although because of the attornment of defendant to the new owner in 1949, the judgment rendered in 1953 could not include a judgment awarding possession to plaintiffs now, it could and did determine that Mrs. McIlvain had the right of possession "from the first day of ▮▮ November 1945 to July 1, 1949, on which date possession was surrendered" by defendant; and that she was entitled to recover damages for the unlawful detention of the premises during that period.

According to defendant's contention, a tenant could always hold over unlawfully until the case was brought to trial (or as here through several trials and reversals) and then escape all liability for damages for unlawful detention by then surrendering possession. This is neither good law nor good sense. (See 2 Tiffany, Landlord and Tenant 1804, Sec. 283, stating: "Nor is the landlord's statutory right to recover damages and costs against a tenant holding over affected by the fact that pending the proceeding the tenant relinquishes possession to him", citing Peters v. Fisher, (Mich.), 15 N. W. 496; McLain v. Nurnberg, (N.D.), 112 N. W. 243; Hebron Church v. Adams, 121 Mass. 257; Barnett v. Feary, 101 Ind. 95.) In Peters v. Fisher, Judge Cooley, in denying the contention that a surrender of unlawfully detained premises prevented judgment for damages and costs, said: "Any rule of law which, under such circumstances, would deprive the complainant of his remedy for previous wrongs if he undertook to save himself from loss for the future by taking and leasing his land, when the defendant allowed him to do so, would be so unreasonable and unjust that it could not for a moment be tolerated. * * * It is true that if he recovers he will not require process to restore him to possession; but his right to recover his damages and costs is unaffected by that circumstance." Defendant's cases concerning a money judgment in unlawful detainer are not in point. In Farwell v. Easton, 63 Mo. 446, it was held error to give the plaintiff only a money judgment when he was also entitled to a judgment for possession and the case was sent back for entry of such a judgment. In McKinney v. Harral, 36 Mo. App. 337, it was

held proper to enter a judgment for possession only, without any money judgment, when plaintiff waived the right to damages. The other cases cited contain general statements that the right of possession is the essential issue and do not present similar fact situations. We, therefore, hold that the judgment rendered was proper under the circumstances of this case.

■ Defendant further alleges error in giving instructions 1 and 2 offered by plaintiffs and in refusing instructions A, B and C offered by defendant. Defendant's objections to instruction 1 were that there was no evidence to support the finding that the rent was payable on the first day of each calendar month; and that it only required a finding that defendant was a tenant of the property and did not require them "to find of whom he was a tenant of said property." As to the former, we have already hereinabove decided this contention against defendant. As to the latter, we think the instruction as a whole was clear as to this matter because it required a finding that Mrs. McIlvain was the owner of the property in 1945 and that defendant was a tenant on a month to month basis in that year. As to instruction 2, defendant says it requires findings the jury could not possibly make, namely, that Mrs. McIlvain died while the case was pending in the Supreme Court, that her executors and trustees applied to the Supreme Court within one year of her death for substitution, and that the Supreme Court substituted plaintiffs. However, these were uncontroverted record matters of which it was proper to inform the jury and it certainly could not be prejudicial to defendant to put them in an instruction in this form. Defendant's refused instructions required showing of plaintiffs' right of present possession of the property, present existence of landlord and tenant relation between plaintiffs and defendant and made the later attornment to the purchaser a complete defense. (Instruction B also included the sufficiency of the notice to vacate.) Defendant was not entitled to these instructions for the reasons hereinabove stated in ruling on the matters they submitted. Defendant's allegations of error as to instructions are overruled.

■ ■ Defendant's final contention is that the contract between plaintiffs and their attorneys is fraught with champerty and maintenance. Their offer of that contract in evidence was refused and we hold this action of the trial court was proper. That contract concerning the compensation of plaintiffs' attorneys would not be a defense to this lawsuit; but if that contract is invalid that matter would be pertinent if and when the attorneys ask the aid of a court to enforce it. (Roeder v. Robertson, 202 Mo. 522, 100 S. W. 1086; Kelerher v. Henderson, 203 Mo. 498, 101 S. W. 1083; see also Curry v. Dahlberg, 341 Mo. 897, 110 S. W. (2d) 742; 112 S. W. (2d) 345.)

The judgment is affirmed. *Hollingsworth, Dalton, Leedy, JJ., Conkling, C. J., Bennick* and *Cave,* Special Judges, all concur.