**Li Ren FONG, Appellee,**

v.

**TOWN & COUNTRY ESTATES, INC., Appellant.**

**No. 79–1010.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1979.

Decided June 19, 1979.

Rehearing and Rehearing En Banc Denied July 10, 1979.

Don R. Lolli (on brief) of Beckett & Steinkamp, Kansas City, Mo., argued, for

appellant; Theodore C. Beckett, Kansas City, Mo., on brief.

Charles C. Shafer, Jr., Kansas City, Mo., for appellee.

Before BRIGHT, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellant, Town & Country Estates, Inc., appeals from a judgment entered on a jury verdict in favor of appellee, Li Ren Fong, on Fong's claim that he was defrauded by Town & Country. The jury awarded Fong $14,400 in actual damages and $65,600 in punitive damages.

For reversal Town & Country argues that: (1) the trial court instructed the jury and received evidence on an improper measure of damages; (2) Li Ren Fong failed to adduce sufficient evidence to support an award of punitive damages; and (3) the punitive damages assessed were excessive. For the following reasons, we affirm the judgment of the district court.[1]

In September, 1974, Li Ren Fong entered into a lease agreement with Town & Country Estates, which managed the Windmill Square Shopping Center in Overland Park, Kansas, which was under construction and scheduled for completion in November, 1974. The five-year lease provided for a space in the shopping center at a minimum monthly rent of $534. As provided in the agreement, the retail space Fong rented consisted merely of bare concrete walls and floor. Fong installed drywalls, petitions, ceilings, plumbing, light fixtures and other improvements which were necessary to establish a retail gift shop. On December 7, 1974, Fong opened his shop.

On November 15, 1975, Fong instituted the present suit alleging that he was falsely induced to lease the space by Lee M. Fowler, vice-president of Town & Country, who represented that at the time Fong negotiated his lease, fifty percent of the shopping center was already leased. Count I of the complaint sought rescission of the lease agreement and $150,000 damages. Count II sought $150,000 actual damages and $500,000 punitive damages. On December 1, 1975, Town & Country sold the shopping center and the new owner released Fong from his lease obligations. In April, 1976, Fong vacated the premises. Because Fong had been released from his rental contract by the new owners of the shopping center, he dropped his claim for rescission in Count I prior to trial.

■ There were two trials in this case. In both trials the juries returned verdicts for Fong finding that at the time Fong entered into the lease much less than fifty percent of the shopping center was leased and that, in fact, Fowler misrepresented the facts to Fong. Fong was awarded $19,200 actual damages and $20,000 punitive damages in the first trial. The trial court then granted Town & Country's motion for a new trial on the ground the jury had returned inconsistent verdicts. The second trial commenced November 7, 1978; this time the jury awarded Fong $14,400 actual damages and $65,600 punitive damages. This is the verdict from which Town & Country appeals. The only issue raised concerns the amount of damages.[2]

---

1. The Honorable John W. Oliver, Chief Judge, United States District Judge for the Western District of Missouri.

2. Appellant also argued that Fong failed to adduce sufficient evidence to prove Town & Country made misrepresentations to him. According to appellant, Fowler's statements that fifty percent of the shopping center was leased were merely future projections and because "fraud 'cannot ordinarily be predicated on unfulfilled promises or statements as to future events,'" *Reed v. Cooke*, 331 Mo. 507, 55 S.W.2d 275, 278 (Mo. banc 1932), *citing* 51 A.L.R. 49, there was no fraud here. Appellant's argument is frivolous. At trial Fowler testified that his claims that fifty percent of the shopping center was leased were merely what Town & Country hoped would occur in the future. Fong testified that Fowler represented that the shopping center was fifty percent leased as of September, 1974, when they were negotiating his lease. Thus, the point appellant raises on appeal is a credibility question which has already been decided by the jury and which is entitled to great deference by this court. *Cf. United States v. Holmes*, 594 F.2d 1167 at 1174 (8th Cir. 1977), *citing United States v. Miles*, 472 F.2d 1145, 1146–47 (8th Cir.), *cert. denied*, 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973).

■ Town & Country's first contention of error is that the trial court improperly instructed the jury that

> having found the issues in favor of the plaintiff you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any actual damages you believe he sustained as a direct result of the occurrence mentioned in the evidence.

According to appellant, this instruction allows Fong to recover "out-of-pocket" expenses, i. e., "the amount . . . paid with interest . . . plus incidental losses and expenses suffered as a result of the seller's misrepresentations," *Salmon v. Brookshire*, 301 S.W.2d 48, 54 (Mo.App. 1957), which are appropriate only when the defrauded party does not retain the property. In this case, argues appellant, Fong retained the property for sixteen months and, therefore, the appropriate measure of damages is the "benefit-of-the-bargain" or "the difference between the purchased property's real value and its value if it had been as represented." *Salmon v. Brookshire, supra*, 301 S.W.2d at 54. According to appellant, because the jury was instructed improperly, it was confused and awarded plaintiff an inappropriate amount.[3]

■ In this diversity case Missouri law controls and appellant's statement of the Missouri law on damages is correct. Both the "benefit-of-the-bargain" and "out-of-pocket" damage awards seek to award a plaintiff damages for the losses proximately caused by the defendant's fraud. *Cf. Kendrick v. Ryus*, 225 Mo. 150, 123 S.W. 937, 939 (Mo.1909). "Benefit-of-the-bargain"

damages are awarded when the defrauded party retains the property while "out-of-pocket" damages are awarded when the defrauded party rescinds the agreement and returns the property. *Salmon v. Brookshire, supra*, 301 S.W.2d at 54; *Schroeder v. Zykan*, 255 S.W.2d 105, 110 (Mo.App.1953). This is because the "benefit-of-the-bargain" measure of damages allows the injured party to retain the property and collect as damages the amount "the property would have been worth if it had been as represented." *Kendrick v. Ryus, supra*, 123 S.W. at 939. This measure of damage is, by definition therefore, based upon retention of the property. *Salmon v. Brookshire, supra*, 301 S.W.2d at 54. In comparison, an award of "out-of-pocket" damages is premised upon the assumption that the injured party has returned the property and is entitled to the expenses which were incurred in accepting and then rescinding the agreement. *Id.*; *Schroeder v. Zykan, supra*, 255 S.W.2d at 110; *accord, Salter v. Heiser*, 39 Wash.2d 826, 239 P.2d 327, 330 (1951).

■ The damage instructions here, which the parties classify as allowing "out-of-pocket" expenses, were proper because plaintiff was no longer in possession of the premises or even obligated to lease the premises when the amount of damages was assessed. Granted, rescission is generally sought simultaneously with a request for out-of-pocket damages, *see, e. g., Miller v. Andy Burger Motors, Inc.*, 370 S.W.2d 654, 660 (Mo.App.1963); *Schroeder v. Zykan, supra*, 255 S.W.2d at 111, but by the time of

---

3. We note that how the court characterized the measure of damages due to Fong more than likely had little effect in the outcome of this case, and, if there had been an effect it probably would have been in appellant's disfavor. According to the parties, the "out-of-pocket" expenses awarded here are the amounts Fong expended on improvements for the leased space. If the jury had been instructed to give Fong damages according to the "benefit-of-the-bargain" test, the jury would still have the option of awarding him "special damages,"

which the parties have also characterized as the amount Fong expended for improvements. *Miller v. Higgins*, 452 S.W.2d 121, 125 (Mo. App.1970); *Salmon v. Brookshire*, 301 S.W.2d 48, 56 (Mo.App.1957). Thus, if the case were remanded, Fong could possibly receive as damages the "benefit-of-the-bargain" to which he is entitled and "special damages," which altogether would exceed the amount received pursuant to the "out-of-pocket" instruction actually given.

trial Fong was not seeking rescission.[4] However, as can be seen from Fong's complaint, he initially sought rescission simultaneously with his request for out-of-pocket damages. It was because of the peculiar events in this case, namely, the new owners of the shopping center released Fong from his lease after his complaint had been filed and before trial commenced, that it was no longer necessary for Fong to seek rescission by the time trial began. This failure to seek rescission simultaneously with a request for out-of-pocket damages does not negate the propriety of the out-of-pocket damage award in this case. The *sine qua non* of whether out-of-pocket damages rather than benefit-of-the-bargain damages should be awarded is whether the defrauded party retains the property at issue. Here Fong no longer retains the property; therefore, out-of-pocket damages are appropriate.

Appellant also contends that the award of punitive damages was erroneous. It advances two arguments: first, there was insufficient evidence to support a finding of legal malice which must be proven to obtain punitive damages, *Ackmann v. Keeney-Toelle Real Estate Co.*, 401 S.W.2d 483, 489 (Mo. banc 1966); and second, appellant argues that, even if the elements for punitive damages were proven, the amount awarded was excessive. We reject both arguments. "The question of whether or not punitive damages shall be awarded and, if so, in what amount rests peculiarly in the discretion of the jury." *Wisner v. S. S. Kresge Co.*, 465 S.W.2d 666, 669 (Mo.Ct. App.1971); *accord, Northern v. McGraw-Edison Co.*, 542 F.2d 1336, 1349–50 (8th Cir. 1976), *cert. denied sub nom. McGraw-Edison Co. v. Soper*, 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977). Appellant has not even attempted to produce evidence as to why the jury erred in finding legal malice or how it erred in assessing the amount of punitive damages. We therefore defer to the jury's determination.

For the foregoing reasons, the judgment of the district court is affirmed.

---

4. Generally, the relative position of the parties is frozen at the time the complaint is filed, *First National Bank of Kansas City v. Kavorinos*, 364 Mo. 947, 270 S.W.2d 23, 26 (Mo. banc 1954), and when the complaint was filed in this case, Fong was in possession of the property. In this instance, however, it was more accurate for the trial court to assess damages on the basis of the current positions of the parties. *Id.*; *cf. Wocet v. Seacat*, 272 S.W.2d 449, 451 (Mo.Ct. App.1948).