**T.M. QUIRK, Respondent,**

v.

**Robert SANDERS and Yvonne Sanders, Appellants.**

**No. 44056.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 17, 1984.

William P. Russell and Anne-Marie Clarke, St. Louis, for appellants.

Arthur S. Hyatt, Clayton, for respondent.

SATZ, Judge.

Plaintiff, T.M. Quirk (Quirk), brought an unlawful detainer action against Robert and Yvonne Sanders (Sanders) to gain possession of property that Quirk had purchased at an execution sale. The Sanders had defaulted on a loan obtained from General Electric Finance Co., d/b/a Homemakers Loan and Discount Corp. (Homemakers). Homemakers obtained a default judgment against the Sanders and had execution levied on the Sanders' property. Quirk purchased the property at the execution sale, and the Sanders' rights to the property were conveyed to him by a sheriff's deed.

After a jury waived trial, judgment was entered in favor of Quirk, ordering transfer of possession of the property to Quirk and assessing damages caused by the Sanders' unlawful detainer. The Sanders appeal. We reverse.

## QUIRK'S MOTION TO DISMISS APPEAL

We first dispose of issues raised by Quirk's Motion to Dismiss this appeal, which we took under submission along with the submission of the case on the merits.

Quirk's Motion to Dismiss is based upon 3 grounds, each of which, Quirk argues, makes moot the substantive issues raised by the Sanders. The 3 grounds rest upon facts which allegedly occurred subsequent to the date of the judgment in issue here.

The 3 grounds are: (1) the Sanders filed a Petition in Bankruptcy and received "a discharge of all debts, including the debt" created by the judgment here; (2) the Sanders signed a release, in which they agreed to dismiss this appeal; and (3) Quirk sold the property in question to Mrs. Sanders' sister and brother-in-law, and, therefore, Quirk no longer has any interest in the property in issue or in this action.

■■■ Issues before an appellate court may be shown to be moot by facts extrinsic to the record, if those facts are properly proved and uncontested. *See, e.g., Kelly v. Boys' Club of St. Louis, Inc.,* 588 S.W.2d 254, 255 (Mo.App.1979); *Koch v. Board of Regents of Northwest Missouri State College,* 265 S.W.2d 421, 424–425 (Mo.App. 1954). We must deny Quirk's Motion to Dismiss, however, because he either failed to establish the facts supporting his motion or these facts were controverted.

## BANKRUPTCY

Quirk simply refers to the Sanders' proceeding in bankruptcy. He did not file an authenticated or a certified copy of the pleadings and actions taken in that proceeding. His allegations in his motion are not self-proving. Thus, the alleged effect of the Sanders' bankruptcy on this appeal has not been factually established. § 490.130 RSMo 1978; *compare Scruby v. Norman,* 91 Mo.App. 517 (1902).

## RELEASE

Quirk has filed a copy of the "release", in which, Quirk argues, the Sanders agreed to dismiss this appeal. By affidavit, the Sanders state they "signed [the release] under duress" and, also, swear to operative facts which, if believed, tend to support their conclusion. Thus, the factual basis of the validity of the release is contested, and the record cannot support Quirk's Motion to Dismiss. *See, e.g., Kelly v. Boys' Club of St. Louis, Inc., supra* at 255.

## QUIRK'S CONVEYANCE OF PROPERTY

Quirk has filed a certified copy of a deed, properly acknowledged, in which he and his wife convey their interest in the property in issue to a Herbert and Priscilla Cole. The date of this conveyance is subsequent to the date Sanders filed their notice of appeal in this case. For our purposes here, we assume the deed properly shows the conveyance. The conveyance, however, does not make moot the basic issues determined by the court below and in issue on appeal: Quirk's right to possession and to damages at the commencement of this unlawful detainer action. *See, e.g., First Nat. Bank of Kansas City v. Kavorinos,* 364 Mo. 947, 270 S.W.2d 23, 26 (Mo. banc 1954).

## POINTS AND ARGUMENTS RAISED IN BRIEFS

We appreciate Quirk's perplexing problem in responding to the Sanders' brief. Most of the facts in the Sanders' Statement of Facts are not contained in the record. Moreover, most of the Sanders' Points and Arguments are neither clear nor explicit. One of the Sanders' Points and Arguments, however, raises an issue which is sufficiently clear to have been and was addressed by Quirk. The disposition of this issue disposes of this appeal.

The Sanders argue that the trial court lacked jurisdiction over the subject matter, and, therefore, the court's judgment is void. More specifically, the Sanders contend that Quirk never had "possession" of the property in question, as required by and within the meaning of Missouri's unlawful detainer statutes. *See* §§ 534.030 RSMo 1978 et seq. This failure, the Sanders contend, precludes Quirk from using these statutes to invoke the jurisdiction of the court. We agree.

■■■ Quirk pleaded and proved he was the purchaser of the Sanders' property at an execution sale, he received a sheriff's deed to the property and he made written demand on the Sanders for possession of that property. These operative facts, in turn, proved Quirk had a right to possession of the property. Quirk's action, however, was not ejectment. It was unlawful

detainer. Unlawful detainer is a statutory action intended to give alternative relief to those who otherwise would be forced to an action in ejectment. *See, e.g.,* 3A G. Thompson, *Real Property,* § 1370 (1981). The issue here then is whether the present facts authorized Quirk to bring an unlawful detainer action as an alternative to an action in ejectment.

 Unlawful detainer is a special statutory action, summary in nature, in derogation of the common law and, therefore, must be pursued strictly in accord with the appropriate statutory provisions. *See, e.g., Y.W.C.A. v. LaPresto,* 169 S.W.2d 78, 79 (Mo.App.1943). The statutes governing the unlawful detainer constitute an exclusive and preclusive code, *e.g., McNeill v. McNeill,* 456 S.W.2d 800, 807 (Mo.App. 1970); thus, provisions of other statutes and their construction are not relevant nor meaningful in construing an unlawful detainer action. *Id.* at 807. If the face of the record does not disclose the required jurisdictional facts, the unlawful detainer proceedings and resulting judgment are void. *E.g., State ex rel. Brown v. Bird,* 228 Mo.App. 800, 73 S.W.2d 821, 824–825 (1934).

Quirk filed his action under § 534.030 RSMo 1978. The pertinent provisions of this statute provide:

"when any person wrongfully and without force, *by disseisin,* shall obtain and continue in possession, ..., and after demand made, in writing, for the delivery of the possession ... by the person having the legal right to such possession, ... shall refuse or neglect to quit such possession, such person shall be deemed guilty of an unlawful detainer." (Emphasis added).

In short, the unlawful detainer action is for "possession" of property by the party who has been "disseised" from that property.

The term "disseisin" was first introduced into the unlawful detainer statutes in the 1840's, Chap. 66, § 3 RSMo 1845, and has remained there without change for 150 years. Since "disseisin" has a precise meaning in legal jargon, we presume the legislature attached that meaning to the term; particularly, since it has been consistently used without change for 150 years. § 1.090 RSMo 1978;[1] *see, e.g., Pulitzer Pub. Co. v. McNichols,* 170 Mo.App. 709, 153 S.W. 562, 567 (1913).

At common law, a disseisin occurred " 'when one enter[ed] intending to usurp the possession, and to oust another of his freehold.' " *Spalding v. Mayhall,* 27 Mo. 377, 379 (1858). According to our Supreme Court, however, "disseisin", as used in the unlawful detainer statute, is not limited only to ousters from a freehold estate, but, rather, includes all ousters from actual possession of the premises in question. *Warren v. Ritter & Ritter,* 11 Mo. 227, 228 (Mo.1848). In the *Warren* case, the Court stated: L.C. 228

"[In this section of the statute], [t]he difficulty is ... to distinguish the circumstances which will authorize this form of action [unlawful detainer] from those which would compel the party to resort to his ejectment. Where any person wrongfully, and without force, by disseizin, obtains possession, he is entitled to this writ. [Citations omitted]. The term disseizin was not, ..., intended to be used in a strictly technical sense [citations omitted], for it is only applicable to freehold estates; yet its use may be significant of the intention of the Legislature to confine the remedy given to cases where the plaintiff is in the actual possession of the premises at the time of the entry. It was this circumstance which distinguished disseizin from abatement and intrusion, which were also terms used by common-law writers to express an ouster from the freehold. Hence, it was provided that the entry was to be wrongful and without force, and upon the actual possession of another. ... None but those who are in actual posses-

1. This statute reads:
"Words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

sion, when the entry was made, can, ... maintain the writ. ... But actual possession does not mean that the owner must stand upon his land constantly to keep off intruders, or that he must keep servants there. [Citations omitted]. Any act done by the owner of land, after his tenant has left it, indicating an intention not to abandon it, but to hold the possession to himself, will continue the possession in him."

For a time, an action of unlawful detainer "could not be maintained by one who had never been in possession. He was driven to an action of ejectment." [Citations omitted]. *Long v. Noe*, 49 Mo.App. 19, 21 (1892). By statutes enacted in 1853, this narrow limitation was expanded slightly. A person who obtained property or an interest in property as an heir, devisee, grantee or assignee of an owner or lessor could maintain an unlawful detainer action if the owner or lessor had the right or would have had the right to maintain that action. Chap. 66, §§ 36 and 37 RSMo 1855. Admittedly, Quirk, as the purchaser of the Sanders' property at the execution sale, acquired all of the Sanders' rights to that property. *See, e.g., State ex rel. Dietrich v. Schade*, 167 S.W.2d 135, 140–141 (Mo. App.1943). To the extent Quirk acquired these rights, he was the "grantee" of the Sanders. The statutes extending the right to bring an action of unlawful detainer, however, provide for that right to be transferred as incident to a grant, assignment or devise. The statutes, thus, contemplate third parties as being guilty of unlawful detainer. *Long v. Noe, supra* at 22. Here, the owners themselves are the parties alleged to be guilty of an unlawful detainer. They would not have had the remedy of unlawful detainer against themselves, and

their "grant" by execution sale and sheriff's deed could not transfer this remedy. Thus, these statutes are not applicable here.

■ No significant change has been made to the statutory designation of parties entitled to bring an action of unlawful detainer since 1853, *compare*, Chap. 66, §§ 36 and 37 RSMo 1855 with §§ 534.260 and 534.270 RSMo 1978; nor has there been any significant change made to the statutory definition of that action since 1845, *compare* Chap. 66, § 3 RSMo 1845 with § 534.030 RSMo 1978. Thus, the statement made by our Supreme Court in 1858 that "[t]he purchaser of real estate under an execution is put to his ejectment if the defendant refuses to yield possession", *Spalding v. Mayhall, supra* at 379, is just as valid and correct today. *See, e.g., Roxana Petroleum Corp. v. Smith*, 24 S.W.2d 652 (Mo.App.1930); *Goff v. Cornell*, 257 S.W. 173 (Mo.App.1924).

■ Quirk, as the purchaser of the property in question at the execution sale, did not acquire actual or constructive possession of that property from which he was "disseised" by the Sanders, Quirk obtained a right to possession only. *See*, 30 Am. Jur.2d *Executions*, § 477 (1967);[2] *see also, State ex rel. Dietrich v. Schade, supra* at 141. He, therefore, could not and did not invoke the jurisdiction of the trial court for his unlawful detainer action. *E.g., Spalding v. Mayhall, supra; see Long v. Noe, supra; cf. Sexton v. Hull*, 45 Mo.App. 339, 342–344 (1891). The trial court's judgment is void.

Judgment reversed.[3]

SIMON, P.J., and STEPHAN, J., concur.

---

**2.** The support for this statement in Am.Jur.2d rests upon one case: *Beggs v. Thompson*, 2 Ohio 95 (1825).

Additionally, we note that our Supreme Court has stated, as dicta, that if the judgment debtor were in possession of the property "at the date of the judgment, the sale under execution would transfer *the possession* or the right of possession to the purchaser." (Emphasis added). *Matney v. Graham*, 59 Mo. 190, 192 (1875). The purchaser at the execution sale, however, simply

acquires all the judgment debtor's "legal rights." *Littlefield v. Ramsey*, 181 Mo. 613, 80 S.W. 949, 951 (1904). This includes the right to possession but not the possession itself, as contemplated by § 534.030 RSMo 1978.

**3.** In his brief, Quirk also makes the following Point and Argument:

"THERE IS NO JURISDICTION FOR APPELLANTS' APPEAL.

Section 534.380 R.S.Mo. (1978) states that an appeal is contingent upon the losing party putting up a sufficient bond.

The Appellants have not put up a sufficient supersedeas bond with the trial court, therefore, there is no jurisdiction for the Appellants' appeal."

We do not address this Point and Argument because:

(1) Quirk has not developed a sufficient argument to show this statutory requirement for a bond is jurisdictional. Rule 84.04; *see, e.g., Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978).

(2) Quirk has failed to show that a sufficient bond was not, in fact, perfected. We are not obligated to produce a record or to search the present record to find support for Quirk's argument. *E.g., Flanigan v. City of Springfield,* 360 S.W.2d 700, 705 (Mo.1962).

(3) If § 534.380 RSMo 1978 is constitutional, jurisdictional and applicable to appeals to intermediate courts of appeal, then, its requirement for a bond is only justified if the Sanders were in possession of the property in issue at the time this appeal was to be perfected. *See Champlin Petroleum Co. v. Brashears,* 592 S.W.2d 545, 546–548 (Mo.App.1979); *see also, Dixon v. Davis,* 521 S.W.2d 442 (Mo.1975). The present record does not show this fact.