Audrey COLLINS, Respondent,

v.

ADAMS DAIRY COMPANY, Appellant.

No. 44712.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 11, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1983.

Application to Transfer Denied
Jan. 17, 1984.

Frank Susman, David Weir, Clayton, for appellant.

Sanford Goffstein, St. Louis, for respondent.

STEPHAN, Judge.

Defendant Adams Dairy Company appeals from a judgment for plaintiff Audrey Collins rendered on a jury verdict for actual and punitive damages on plaintiff's claim that defendant fraudulently induced her to enter into a franchise agreement. The jury awarded plaintiff $75,000 actual and $95,000 punitive damages. The jury also awarded defendant $12,000 on its counterclaim which is not at issue here. For reasons set out below, we reverse and remand for a new trial on the question of defendant's liability, as well as on the issues of actual and punitive damages.

Defendant manufactures and sells ice cream. It operates numerous ice cream stores under the name Velvet Freeze and is well-established in the St. Louis area. In April 1978, plaintiff Audrey Collins contacted defendant and inquired about obtaining a Velvet Freeze franchise. David Block, an independent contractor who had been engaged by defendant to secure prospective franchisees, met with Ms. Collins. At this meeting, Ms. Collins asked Mr. Block about opening an ice cream store at a location she had selected. Ms. Collins expressed concern, however, about another Velvet Freeze ("Store 47") located a mile away on the same street. Mr. Block told her that the lease on Store 47 was not going to be renewed and that the store would be closed in the middle of December 1978. In fact, this store was not going to be closed and the lease was renewed in October 1978. Further, Mr. Block gave Ms. Collins profit and loss statements which he said were based on past experience and were realistic figures based on existing Velvet Freeze stores. In actuality, these statements were not based on existing Velvet Freeze stores, but had been made up by the defendant's controller, J.L. Stevens, using figures obtained from another franchise operation in Minnesota.

Relying on these misrepresentations, Ms. Collins obtained a $63,000 loan from Mehlville Bank and opened her store on September 2, 1978. In December 1978, she discovered that the lease on Store 47 had been renewed. She met with Mr. Stevens and Mr. Block and stated that she wanted Store 47 closed. Mr. Block assured her that it would be closed. The store was not closed. Ms. Collins' business failed; her store closed on December 31, 1979, one year and four months after it opened. At this time she owed $49,350 on the bank loan. The bank sold her collateral, which consisted of $21,000 in bonds, $1000 in stock and the equipment and inventory, leaving a balance due on the loan of $11,734.52. The bank filed suit against Ms. Collins and obtained a judgment against her on December 23, 1980, for $15,409.52, costs and interest from June 13, 1980. In addition, Ms. Collins had expended $11,300 of her own funds for the business while it was still active.

■ Defendant's first allegation of error concerns the exclusion of two of its exhibits. At trial, counsel for defendant attempted to question Jerry Spitzer, president of Adams Dairy, about other ice cream stores near the Collins store. Objection to this question was sustained and exhibits F and G were proffered in an offer of proof, to-wit:

Q Can you tell us what other ice cream stores were located in the general vicinity of the plaintiff, Audrey Collins' store?

Mr. Goffstein [attorney for plaintiff]: Let me object to this as before as to what other ice cream stores. We're dealing strictly with the Velvet Freeze franchise. And what other ice cream stores has no bearing or relevance.

Mr. Susman [attorney for defendant]: Can we approach the bench, Your Honor?

\* \* \* \* \* \*

Mr. Susman: Defendant intends to offer—in the event the objection is sustained—we would submit this same information then as an offer of proof. It is a two-part offer. And the first part has to do with the location of other ice cream stores in the similar nature by mileage within the proximity of Audrey Collins' store. And that testimony would be as contained on defendant's—what has been marked as defendant's Exhibit G. Although, obviously, not at this point introduced because I assume there would be an objection to it. And the second part of it is to show that over fifty percent of all the Velvet Freeze locations are within a very close proximity to one another. Of course, some twenty four stores, out of the forty five are within less than three miles from each other. And there is a list showing all of those addresses and all of those locations. And it goes to the issue of her damage by claiming store 47 somehow had a disastrous effect. This is very commonplace. And there were other stores located very close to where she was. Not only is it common among Velvet Freeze, it is common in the entire industry.

The trial court ruled that these exhibits were irrelevant. Determination of whether proffered evidence is relevant, in the first instance, falls within the sound discretion of the trial court; its determination will be upheld absent a showing of abuse of discretion. *City of Cape Girardeau v. Robertson,* 615 S.W.2d 526, 531 (Mo.App.1981). Upon examination of the record, we are left with no doubt but that such abuse was demonstrated here; the exhibits should have been admitted.

In order for a false representation to be actionable, there must exist a causal connection between the misrepresentation and the harm sustained. "It must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause, and the damage must be such as is the natural and probable consequence of the fraud." 37 Am.Jur.2d *Fraud and Deceit* § 293. The damages recoverable represent the pecuniary loss to the recipient of the misrepresentation of which the false statement is a "legal cause," i.e., the loss reasonably expected to stem from reliance upon the representation. Restatement (Second) of Torts §§ 548A, 549.

To prevail under her theory of the case, plaintiff had to show not only that defendant's representations were fraudulent but also that they were the direct and proximate cause of her losses. It is not enough that plaintiff would have suffered no damages if she had not purchased the franchise, and that she would not have purchased the franchise had she known that Store 47 would not be closed; it must be shown that failure to close Store 47 was the direct and proximate cause of her loss. See Restatement (Second) of Torts § 548A, comment b at 107. Defendant was entitled to resist such efforts by showing that Store 47's continued existence was not the cause of the failure of plaintiff's business. To this end, defendant should have been permitted to show that other ice cream stores were in operation near plaintiff's store and that other Velvet Freeze stores successfully coexisted in close proximity to other Velvet Freeze stores in the St. Louis area. From the offer of proof, we perceive that this is precisely what exhibits F and G were designed to accomplish. Defendant was free to advance any reasonable theory as to what caused plaintiff's business to fail, e.g. her own errors in the exercise of business judgment, or simply to negate the continued existence of Store 47 as a cause of the loss. Cf. *Hanson v. Ford Motor Company,*

278 F.2d 586, 598 (8th Cir.1960). The relevance of the exhibits is self-evident; their exclusion constitutes reversible error.

Defendant further claims that the trial court erred in failing to set aside the punitive damages award. Defendant argues that despite any apparent authority Mr. Block had as defendant's agent, plaintiff did not show that defendant authorized the statements made by Block or knew that Store 47 would not close prior to signing the license agreement. Inasmuch as we must send this case back for retrial on the issues of liability and actual damages, we do not explore in depth the question of punitive damages. Without evidence of actual damages, there can be no exemplary damages. *O'Shaughnessy v. Ward Aircraft Sales & Service, Inc.,* 552 S.W.2d 730, 736 (Mo.App. 1977). Such rule acquires added significance in a case of this nature where actual pecuniary loss is an intrinsic element of the cause of action. *Harris v. Penninger,* 613 S.W.2d 211, 214 (Mo.App.1981). With respect to the propriety of punitive damages, we merely note that defendant's liability therefor does not hinge upon its knowledge of Block's representations or its subsequent ratification of them. Rather, defendant's liability is governed by the principles enunciated in *Fischer v. MAJ Investment Corporation,* 631 S.W.2d 902, 906 (Mo.App.1982): "(P)unitive damages may be awarded against a corporate defendant for the wrongful acts of its agent committed in the course of his agency and by virtue of his authority as agent ... Of course, to recover punitive damages, the evidence must show that the conduct of defendant or his agent was willful, wanton or malicious ... A showing of legal malice is sufficient— that is, the intentional commission of a wrongful act without just cause or excuse." (Citations omitted.)

The remaining points raised on appeal focus principally on evidentiary rulings and comments of the trial court which are unlikely to arise in the same context on retrial, and we decline to consider them on an advisory basis.

We reverse and remand for a retrial on the issues of liability and actual and punitive damages, consonant with the foregoing.

SIMON, P.J., and SATZ, J., concur.