Lewis HEBERER, Plaintiff–Appellant,

v.

SHELL OIL COMPANY, a corporation,
and E.L. Minton,
Defendants–Respondents.

No. 69293.

Supreme Court of Missouri,
En Banc.

Jan. 20, 1988.
Rehearing Denied Feb. 17, 1988.

Sidney Fortus, Clayton, for plaintiff-appellant.

David Wells, Michael J. Morris, Lawrence C. Friedman, St. Louis, for defendants-respondents.

HIGGINS, Judge.

Lewis Heberer sued defendants alleging they made false collateral misrepresentations to him by falsely representing he would be given the right to operate a new service station to be located at 1240 Brentwood Boulevard if he would extend his current 3–year lease as a Shell dealer at 1421 Brentwood Boulevard. He sought damages for anticipated profit had he been

made a dealer at the new station, from the time the new station opened until the time of trial, and also for future damages, same being anticipated profits had Shell given him the station, up to the extent of Shell's lease where the new station was built. The jury returned a verdict for defendants on all issues, and judgment was rendered accordingly. The Court of Appeals, Eastern District, reversed and remanded for a new trial. This Court transferred the case to examine the question of damages. Affirmed.

In 1977, Lewis Heberer entered into a 3–year lease with Shell Oil Company to operate a Shell service station at 1421 Brentwood Boulevard in St. Louis County. The lease extended through October 31, 1980. On June 24, 1980, he and Shell entered into a 3–year successor lease for Heberer to continue to operate this service station. The successor lease began on November 1, 1980, and was to end on October 31, 1983.

In early 1982, Heberer learned that Shell had acquired an interest in land at 1240 Brentwood Boulevard and planned to open a new service station at that location. The new service station was within a short distance of the 1421 Brentwood station. This location was considered by Heberer to be more advantageous because it is adjacent to U.S. Highway 40 entrance and exit ramps.

Shell, through its territory manager, E.L. Minton, had discussions with Heberer concerning early renewal of his lease at 1421 Brentwood around March 1982, shortly prior to completion and opening of the new station. Major conflict arose at trial over why the lease was extended early and who initiated the process. Defendants testified that plaintiff learned of the new station early in 1982 and requested that his lease be extended at the old station ahead of schedule to insure his future with Shell. Plaintiff testified the territorial manager, defendant Minton, requested that plaintiff enter into a new lease ahead of schedule. When plaintiff refused to agree to this arrangement, plaintiff testified that Minton then offered him the new station to operate

as a Shell dealer when it opened for business. Plaintiff testified he signed the extended lease for the old station on June 1, 1982, in reliance on Shell's representation. The new lease was to run from June 1982 through May 30, 1985. This arrangement would extend the second lease from November 1, 1983, through May 30, 1985. Shell did not own, but was leasing, the land on which Heberer's station was located, and Shell's lease with that owner was to terminate on May 30, 1985, the same date that the extended lease proposed to Heberer was to end.

Heberer signed the extended lease. Shortly thereafter, on June 22, 1982, Shell opened the new service station, company operated. Two independent dealers offered the new station declined Shell's offer. Shell representatives testified that Heberer was never a consideration and that Shell never offered the new station to him. Shell claims that until suit was filed in this action they were not aware of Heberer's claim that Minton had promised him the new station as a means of inducing him to sign the lease extension at the old station. Plaintiff testified that when he found out approximately one week prior to the opening of the new station that he was not going to be given the job as dealer at the new station, he did not question Minton or any other Shell representatives, and did not discuss the alleged inducement to extend his lease with any Shell representative.

Appellant requested a new trial alleging error in Instruction 11, a purported affirmative defense submission. Instruction 11 directed a verdict for defendants if the jury found that plaintiff had the right, without penalty, unilaterally to terminate his lease to the old service station on 90 days notice and, as a consequence, did not sustain any damage.

The Court of Appeals, Eastern District, granted plaintiff a new trial on the ground Instruction 11 was misleading and misapprehended the nature of Heberer's claim. The court also determined that appellant was entitled to recover any pecuniary losses that are within the foreseeable risk of harm the misrepresentation creates, and

that plaintiff was entitled to lost profits at the new station so long as they can be proved with reasonable certainty.

Appellant contends: that he is entitled to recover on the fraud claim because there was a collateral fraudulent misrepresentation by defendants; that he is entitled to profits at the new station under the "benefit of the bargain rule"; that he had the right to stand on the contract and sue for actual and punitive damages, which he did; that the 90–day cancellation provision in the lease was not a valid defense in a fraud action; and that his cause of action was properly brought in tort and not in contract. The dispositive question is whether plaintiff made a submissible case in fraud.

█ The elements of fraud are: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) his right to rely thereon; and, 9) the hearer's consequent and proximately caused injury. *Sofka v. Thal,* 662 S.W.2d 502, 506 (Mo. banc 1983). A failure to establish any one of the essential elements of fraud is fatal to recovery. *Dolan v. Rabenberg,* 360 Mo. 858, 231 S.W.2d 150 (1950). *Empire Gas Corp. v. Small's LP Gas Co.,* 637 S.W.2d 239, 242–243 (Mo.App. 1982).

█ The courts of this state are committed to the benefit of the bargain rule as a method of arriving at damages in a case of fraud and deceit. It allows a defrauded party to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented. *Smith v. Tracy,* 372 S.W.2d 925, 938 (Mo.1963), *as quoted in Auffenberg v. Hafley,* 457 S.W.2d 929, 937 (Mo. App.1970). The damages are measured at the time of the transaction. *Id.* at 937.

█ There are a number of cases in this state in which damages amounting to the difference between the value of the property as represented and its actual value were allowed: *Kendrick v. Ryus,* 225 Mo. 150, 123 S.W. 937 (1909) (fraudulent lease of mining rights); *Smithpeter v. Mid–State Motor Co.,* 74 S.W.2d 47 (Mo. App.1934) (fraudulent sale of automobile); *Jeck v. O'Meara,* 343 Mo. 559, 122 S.W.2d 897 (1939) (fraudulent sale of securities in company retailing automobiles); *Salmon v. Brookshire,* 301 S.W.2d 48 (Mo.App.1957) (purchase of a cow); *Smith,* 372 S.W.2d 925 (sale of garbage business); *Auffenberg,* 457 S.W.2d 929 (sale of automobile); they are distinguishable from Heberer's claim. In those cases, the plaintiffs gave something of value, usually money, for the rights to some property. It is natural that they should receive the benefit of the bargain if they choose not to rescind the agreement and ask for return of their initial investment. At most, appellant Heberer agreed to an extension of his lease, which he could unilaterally terminate without penalty upon 90 days notice, for the right to manage the new station. Benefit of the bargain damages as defined above do not flow naturally from this alleged misrepresentation. Appellant received nothing of value in return for his agreement to extend the lease. The benefit of the bargain rule does not apply where the purchaser rescinds and returns the property received or where he received nothing of value. *Brookshire,* 301 S.W.2d at 54. In such case, he may properly recover the amount he paid with interest from the date of payment, plus incidental losses and expenses suffered as a result of the seller's misrepresentations. *Id.* at 54. Appellant has claimed no losses from extending his lease at his old station. His claim is only for loss of profits at the new station, a claim not contemplated or allowed under the above standard.

In order for a false representation to be actionable, there must exist a causal connection between the misrepresentation and the harm allegedly sustained. *Collins v. Adams Dairy Co.,* 661 S.W.2d 603, 605 (Mo.App.1983). "It must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause, and the damage must be

such as is the natural and probable consequence of the fraud." 37 Am.Jur.2d Fraud and Deceit, section 293, as quoted in *Collins*, 661 S.W.2d at 605. Appellant claimed he was injured by respondents' misrepresentations which caused him to agree to the extension of the dealer and lease agreements at his old station. Appellant claims no damages from that operation, and none were proved at trial. Even if the misrepresentations occurred as appellant contends, he still suffered no harm. Appellant's extension of the lease at the old station did not cause him to lose anticipated profits at the new station. Appellant has not established a causal connection between the alleged misrepresentation and the harm sustained. In other words, appellant has not proven that the lost profits expected at the new station were the natural and probable consequence of the alleged fraud, extension of the lease at the old station. Appellant's claim therefore fails.

Accordingly, the judgment in favor of the defendants is affirmed.

BILLINGS, C.J., and BLACKMAR, DONNELLY, WELLIVER, and ROBERTSON, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

RENDLEN, Judge, dissenting.

I respectfully dissent.

The record establishes that appellant (plaintiff) made a submissible case of fraud and defendants' "affirmative defense" instruction (Instruction # 11) was not only misleading but incorrectly stated the law; therefore, I submit plaintiff is entitled to a new trial.

It is conceded by the majority that the elements of fraud are as set out in *Sofka v. Thal*, 662 S.W.2d 502, 506 (Mo. banc 1983), and that plaintiff made a submissible case as to the first eight elements of fraud is not seriously questioned on appeal. They include: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) his right to rely thereon; and 9) the hearer's consequent and proximately caused injury. The false representations in this case were vital and material. According to plaintiff he was told by defendant that if he signed the new lease for the old station at 1420 Brentwood *he would get the new station* at 1240 Brentwood.[1] The materiality of that representation is evident from the record; plaintiff testified that he initially rejected Shell's suggestion that he renew the lease on the old station and extend his obligation through May 1985, which was the month when Shell's lease for the land expired. Plaintiff explained to defendant Minton, the territory manager, that "with that new station going up, I might not be able to make it." Nevertheless, plaintiff was induced to sign the lease at a later meeting by the promise that he would be given the new station. There was evidence as well that, in fact, Shell at no time considered plaintiff a serious candidate for the new station because he was, in their opinion, only a marginal dealer, and that Shell and Minton knew that the representation which induced plaintiff to change his position was false at the time it was made. The jury could reasonably infer that the representation was made to entice plaintiff to cancel his existing lease and enter into, at an early date, a new lease containing harmful and disadvantageous provisions so that Shell would have a dealer commitment for the old station until the expiration of its lease in May of 1985. This would also keep the Shell presence visible and alive within approximately 800 feet of the new location

---

1. Plaintiff testified as follows:
   A. He [Minton] came out and he told me that if I signed the lease I would have the new station.
   Q. He told you you would get the new station?
   A. Yes.
   Q. The new station that Shell was building?
   A. Yes.
   Q. Did you then sign the lease?
   A. Yes, I did.

during the period of construction and start up of the new station at 1240 Brentwood. These were direct immediate benefits Shell received.

The record is replete with evidence that plaintiff was ignorant of the falsity of the representation and relied on it to his detriment when induced to sign the lease. In reliance upon those misrepresentations, plaintiff changed his position, spent valuable hours of personal labor, and under spell of the false representation signed a new lease with disadvantageous terms. The new lease cut back the maximum amount of products he could require Shell to provide. Thus he gave up a valuable right contained in the old lease. Additionally, plaintiff began accepting employment applications from people interested in working at the new station and selected some employees. He also spent time making arrangements to obtain necessary financing and checked on the progress of the new station every day. Periodically plaintiff requested more information from Minton about when the new station would open and Minton kept him dangling by responding that he would let plaintiff know in due time. Plaintiff finally learned that he had been lied to and would not be allowed to operate the new station when, by chance, he stumbled onto a meeting between Minton and the person Shell had selected to manage the station at a restaurant one week before the new station opened for business. As to plaintiff's right to rely on the false representations, it should be noted that he not only had discussions with Minton, who spoke for the company as territory manager of the area including plaintiff's old station, but one meeting included Minton's superior in the Shell organization, who asked plaintiff technical questions about projections for the new station. In sum, it is clear that plaintiff made a strong evidentiary showing as to the first eight elements in his claim for fraud.

However, plaintiff was erroneously denied a fair and proper submission of the cause to the jury by defendants' instruction # 11.

The only element seriously in dispute is whether plaintiff was damaged by defendants' misrepresentations. Defendants' instruction # 11, apparently treated as an affirmative defense instruction although more properly denominated a converse, provided as follows:

Your verdict must be for the defendants if you believe:

First, that the plaintiff entered into a lease and dealer agreement with Shell Oil Company on June 1, 1982; and

Second, the plaintiff could have terminated both the lease and the dealer agreement at any time by giving Shell Oil Company at least ninety days notice; and

Third, because of the right to terminate the lease and the dealer agreement, the plaintiff's obligations as a Shell dealer were not extended from November 1, 1983 through May 30, 1985; and

Fourth, because of the right to terminate the lease and dealer agreement, the plaintiff was not damaged by entering into the lease and dealer agreement on June 1, 1982.

This instruction was misleading and erroneous whether plaintiff sought to rescind the agreement and recover damages flowing from his reliance on the misrepresentations or, alternatively, sought to continue to fulfill his obligations under the agreement and recover damages based upon the benefit of the bargain he was deprived of by fraud. *See Salmon v. Brookshire*, 301 S.W.2d 48, 54 (Mo.App.1957).[2] The instruction is simply not pertinent to either theory, as paragraphs second and third miss the decisive point in the case. There is no question that the old lease contained a 90–day termination provision, but this isolated

2. The majority blithely asserts that "[plaintiff] has claimed no losses from extending his lease at the old station"; however, plaintiff did allege that the extension of his lease was "to his detriment." Further, even in fraud cases, issues tried by express or implied consent of the parties are treated as if raised in the pleadings.

*MacCurrach v. Anderson*, 678 S.W.2d 459, 462 (Mo.App.1984). As noted, there was significant evidence indicating that appellant *was* damaged by the renewal of the lease beyond the claimed loss of anticipated profits at the new station, despite the provision allowing him to terminate the lease on 90 days notice.

fact is merely peripherally involved. The sine qua non is that plaintiff was hoodwinked into signing a new lease which contained less advantageous terms and, believing he was to get the new Shell station, plaintiff took additional steps changing his position by undertaking various tasks costing time and money. Further, plaintiff's bargaining position with Shell was substantially diminished by signing the unfavorable lease. Paragraphs second and third of instruction #11 misled the jury and failed to take into account the operative facts previously mentioned.

In short, there were actual damages which could have been found by the jury despite the existence of the termination clause, and defendant's "affirmative defense" instruction was not the complete defense it purported to be. Defendant's instruction did more than inform the jury that plaintiff could not recover if he suffered no damages and was misleading, confusing, and erroneous. Thus, plaintiff under proper instructions could rescind and seek damages for the items discussed above.

However, plaintiff was also entitled under the benefit of the bargain rule, to which the majority says we are committed, to seek as damages anticipated profits so long as they are not too speculative. In *McGuire v. Bode,* 607 S.W.2d 165 (Mo.App. 1980), the plaintiff asserted that she was induced to enter into a lease of defendant's house by defendant's representation that the house would not be sold; however, less than a month later defendant sold the house. The plaintiff's lease was terminable on 30 days notice, a fact which the defendant asserted precluded any claim of damage. The court stated on appeal:

> It may be that defendant ... means to suggest that the plaintiff suffered no injury as a consequence of the alleged fraud—that she got, after all, precisely what she bargained for, to wit, the lease of a certain house under a month-to-month tenancy. The misrepresentation attributed to the defendant, as the argument would run, did not relate to the identity of the house, or to its condition, value, or anything of that kind, but relat-

ed rather to a collateral matter, namely, defendant's immediate plans to sell the house. It is true that this may make the amount of the damages somewhat nebulous, but it does not necessarily remove the case from the category of compensable damages. *Burch v. Union Life Insurance Co.,* 319 S.W.2d 908, 911–912 (Mo.App.1959); *Thayer–Moore Brokerage Co. v. Campbell,* 164 Mo.App. 8, 147 S.W. 545, 550 (1912). *See also* Anno., "Uncertainty as to Damages", 78 A.L.R. 858 (1932).

The majority makes no contention that the termination option referred to in the challenged instruction was pertinent to the profits at the new station which plaintiff lost as a result of the fraud; nor does it assert that those damages were too speculative and uncertain. Instead, the majority concludes the benefit of the bargain rule does not apply because plaintiff "received nothing of value in return for his agreement to extend the lease." This quite simply does not square with the facts. Plaintiff received a promise that he would be the Shell dealer for the new station if he would execute a new (less advantageous) lease for the old station. If this significant promise was rendered valueless, it is only because of defendant's fraudulent actions. The majority cites *Salmon v. Brookshire,* 301 S.W.2d at 48, for the proposition that because the plaintiff received nothing of value he is not entitled to the benefit of the bargain. In doing so they misconstrue *Salmon,* which deals with a purchaser who is defrauded into purchasing a cow falsely represented as being registered with the American Hereford Association. The Court in *Salmon* held that when the purchaser rescinds and returns the cow, or where the purchaser has received nothing of value, i.e. has not received the cow, the purchaser's damages are not measured by the difference between the cow's real value and its value if it had been as represented. However, the purchaser in such cases may recover the amounts paid, interest included, losses and expenses suffered as a result of the seller's misrepresentations. In *Salmon,* the plaintiff chose to, and was success-

ful in, recovering benefit of the bargain damages. Plaintiff here preserved his option to sue for rescission and recover incidental losses plus punitive damages or attempt to obtain benefit of the bargain damages. Under either option defendant's instruction # 11 was misleading and erroneous, and on retrial plaintiff would be entitled to proceed under proper instructions applicable to his theory of recovery.