Susan NIGRO, et al., Appellants,

v.

**RESEARCH COLLEGE OF NURSING, et al., Respondents,**

and

**Rockhurst College, Respondent.**

No. WD 48170. ·

Missouri Court of Appeals, Western District.

March 29, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1994.

Application to Transfer Denied June 21, 1994.

Glenn Edward Bradford, Kansas City, for appellants.

Timothy D. O'Leary, Kansas City, for respondent Research College of Nursing.

Brian A. Snyder, Kansas City, for respondent Rockhurst College.

Lindsay Kathleen McFerrin, Kansas City, for respondent Rockhurst College.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellants appeal from a summary judgment entered in favor of respondents, Research Medical Center, Inc., d/b/a Research College of Nursing (Research), and Rockhurst College (Rockhurst). Appellants, Susan Nigro, Amelia Howard, William Wilson, J. Blaine Wright, Sherry Hawkins, and Catherine Cropper, are graduates of the joint degree program offered by Research and Rockhurst, and received a Bachelor of Science in Nursing (B.S.N.) degree.

The stipulated facts are as follows: In 1979, Research and Rockhurst entered into an agreement to offer a joint degree of B.S.N. This program began in the fall of 1980 and the first class graduated in the spring of 1984. Research's Fall 1980 brochure stated that it had graduated over 2,000 nurses since 1906 from its three-year diploma program. Rockhurst has been a highly regarded educational institution for many years. Research had been accredited by the Missouri State Board of Nursing, the licensing board for Registered Nurses (R.N.) in Missouri, as a three-year diploma program. It maintained that accreditation when the joint degree program was offered. Being licensed by the Board is all that is required to practice nursing in Missouri. Most states admit Missouri licensed nurses to practice nursing by reciprocity.

At issue in this appeal is Research's alleged misrepresentation to appellants as to its accreditation status with regard to two accrediting bodies, the North Central Association for Colleges and Schools (NCA) and the National League for Nursing (NLN). There are three separate accrediting bodies for nursing education programs: the Missouri State Board of Nursing; NCA, whose Commission on Institutions of Higher Education accredits post-secondary institutions to provide public certification that an institution is of acceptable quality and to assist in improving their educational programs; and NLN, the national accrediting agency specifically for nursing education. Both NCA and NLN are voluntary, independent accrediting bodies that provide for the maintenance and enhancement of educational quality. After receiving NCA accreditation, a nursing program can then seek accreditation from NLN.

In June of 1980, NCA's Commission granted Research status as a candidate for accreditation and advised that a site visit would be scheduled for the 1981/1982 school year. It recommended that Research's brochure state: "Research College of Nursing is a candidate for accreditation by the Commission on Institutions of Higher Education of [NCA]."

Research's Fall 1980 brochure stated, on page 1, "Accredited by: Missouri State Board of Nursing" and "Candidate for Accreditation: North Central Association of Colleges and Schools." On page 7 of the brochure, under the heading "Accreditation," the brochure stated, "The Missouri State Board of Nursing." Page 17 of the brochure further stated, in part:

The Boards of Trustees for both Rockhurst College and Research Medical Center have formally approved the new program. The Missouri State Board of Nursing also has approved the joint effort. The [NCA] has approved the Bachelor of Science in Nursing for Rockhurst College; *Research College of Nursing has also been granted by [NCA] "candidacy for review" status. Accreditation for Research College of Nursing is expected in 1983* (emphasis added).

Furthermore, all students making inquiry and application to the nursing education program at Research received a letter from John Ralston, Student Services Coordinator. Attached to his letter was information about the nursing program, which restated much of the information in the Fall 1980 brochure, including the language above-quoted from page 17 of the brochure.

Candidacy for accreditation by NCA's Commission is continued by evaluations every two years. These evaluations are conducted to determine that the institution continues to meet the Criteria for Candidacy for Accreditation and also to assist the institution as it moves toward fulfilling the Criteria for Accreditation. The maximum length of candidacy is six years.

NCA's Commission visited Research to review its candidacy for accreditation in April 1982. The evaluation team recommended that Research "be continued at the candidate for accreditation status at the Bachelor's Degree granting Level." The reason cited was: "The College is making progress toward initial accreditation."

The next site visit by NCA's Commission was scheduled for November 1984. However, this visit was postponed because of the resignations of Research's Dean and Assistant Dean in June 1984. NCA's Commission next visited Research in February 1985. The evaluation team denied accreditation at that time mostly because (1) Research was without a Dean or Assistant Dean, and (2) faculty needed strengthening in terms of their academic qualifications and collegiate experience; specifically, faculty members are required to possess a minimum of a master's degree in a field of nursing. However, the evaluation team recommended that the candidacy for accreditation be continued.

NCA's Commission next visited Research in October of 1986. At that time, it recommended that initial accreditation be granted. NCA's Commission took formal action granting accreditation at its meeting on February 27, 1987, the effective date of accreditation.

On June 1, 1987, Research scheduled an NLN accreditation site visit for April 1988. The recommendation of the visiting NLN evaluation team was to grant Research accreditation, which officially occurred on October 18, 1988. That accreditation was retroactive to April 1987, but not retroactive to the 1984 and 1985 graduating classes of which appellants were a part.

On August 6, 1990, appellants filed a "Petition for Damages—Misrepresentation—Fraud by Silence" in the Circuit Court of Jackson County, Missouri. In their petition, they alleged that, as members of the graduating class of 1984 or 1985: (1) they never received accreditation from either NCA or NLN; (2) accreditation by NLN is generally accepted as necessary to constitute a fully-accredited institution of nursing; (3) respondents were under an obligation to communicate to appellants the true state of facts relative to accreditation; (4) at the time of matriculation, respondents represented to appellants that respondents' nursing program was a "candidate for accreditation" by NCA and that full accreditation was "expected" in 1983, however respondents never indicated to appellants that NCA accreditation was a prerequisite to NLN accreditation or that NCA accreditation normally required a six-year candidacy period, and respondents had no basis for the published statement that full accreditation was expected by 1983; (5) respondents did not timely advise appellants of the significance of lack of NCA and NLN accreditation, that NLN accreditation was a requirement for admission to most graduate programs, and that such accreditation would not be received in 1983, or that such accreditation, when received, would not be retroactive; (6) Research knew that the classes of 1984 and 1985 were never going to have NLN accreditation because the Research faculty was given until 1986 or 1987 to secure the requisite master's degrees, which fact was never communicated to appellants; (7) when Research ultimately received NCA and NLN accreditation, the classes of 1984 and 1985 did not receive retroactive accreditation; (8) appellants relied on information provided by respondents; (9) had respondents not advised appellants that full accreditation was expected by 1983 and had respondents communicated the significance of NCA and NLN accreditation, appellants would not have matriculated or would have transferred to a fully-accredited school of nursing, all such facts being material facts; (10) appellants have been damaged because the unaccredited degrees granted by respondents are worth substantially less than a degree from a fully-accredited institution, thus limiting job prospects, advanced education, and expected future earning power; (11) respondents' conduct was knowing and intentional, willful, wanton, and malicious.

Respondents, Research and Rockhurst, filed two separate motions for summary judgment on the issue of liability.[1] Respondents argued: (1) any alleged misrepresentations by Research concerning NCA accreditation were expressed as expectations regarding future events and, as a matter of law, were not actionable as fraud; (2) appellants knew that NCA and NLN were independent organizations and that it was their role and independent function to decide the issue of accreditation and Research had no input or control over that decision; and (3) appellants sustained no damages as a matter of law.

On June 17, 1993, the trial court sustained respondents' separate motions for summary judgment and dismissed appellants' petition. In its order, the court stated, in pertinent part:

Plaintiffs' claims are based upon a theory of fraud by silence.... The facts of this case, as it relates to the formation of the relationship between the parties, did not create a legal duty upon the defendants to disclose to plaintiffs the significance of accreditation or that accreditation could not be achieved prior to plaintiffs' completion of the course work. The disclosures which plaintiffs allege were not given to them were not material to the stated purpose of the nursing program offered by the defendants. Whether a fiduciary relationship existed between the plaintiffs and the defendants, it did not extend to disclosures as to accreditation.

This appeal followed.

On appeal, appellants argue that the trial court erred in granting summary judgment in favor of respondents "on the issue of respondents' duty to disclose to appellants material facts regarding accreditation." Appellants argue that under Missouri law, where respondents have made affirmative statements regarding the likelihood of achieving accreditation by the time of appellants' graduation, respondents thereby incurred a legal duty to disclose all material facts related to respondents' receipt of accreditation. Appellants contend that respondents failed to disclose to them that accreditation would not be available at the time of appellants' graduation. Finally, appellants assert that the issue of whether respondents owed appellants a duty to disclose was a question of fact for the jury.[2]

We find that summary judgment was proper, and we affirm the granting of summary judgment in favor of respondents.

■■■ When considering appeals from summary judgments, this court will review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

■■■ The propriety of summary judgment is purely an issue of law, and our review is essentially de novo. *Id.* As the trial court's judgment is founded on the rec-

1. The parties stipulated to the liability issues.

2. At the outset of their brief, respondents argue that appellants' Point Relied On should not be considered by this court because it violates Rule 84.04(d) requiring a concise statement of the challenged ruling of the trial court and stating the rule of law which the court should have applied. Respondents contend that the trial court ruled only that the disclosures not given to appellants were not material to the stated purpose of the nursing program as a matter of law, and that appellants failed to address this ruling in their brief, thus not presenting anything for this court to review. In other words, respon-

dents contend that in appellants' Point Relied On, appellants are presenting an issue that was not ruled upon by the trial court. Respondents argue that the only issue that should be addressed is whether the accreditation statement in the brochure was material to the stated purpose of the nursing program offered by respondents.

Having reviewed the trial court's order for summary judgment and appellants' Point Relied On, we conclude that appellants' Point Relied On is not in violation of Rule 84.04(d), and we reject respondents' contention that appellants are presenting an issue that was not ruled upon by the trial court.

ord submitted and the law, this court need not defer to the trial court's order granting summary judgment. *Id.*

■ Summary judgment permits the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.;* Rule 74.04. Where the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is not proper. *ITT Commercial Finance Corp.,* 854 S.W.2d at 378.

■ A movant's right to judgment as a matter of law differs significantly depending upon whether that movant is a "claimant" or a "defending party." *Id.* at 381. Under Rule 74.04(c), "where a 'defending party' will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment." *Id.* at 381 (emphasis in original). Rather, as is relevant to the case at bar, a "defending party" may establish a right to judgment as a matter of law by showing facts that negate *any one* of the claimant's elements facts. *Id.* at 381. Once the movant has made the prima facie showing required by Rule 74.04(c), the non-movant's response—by affidavit, depositions, answers to interrogatories, or admissions on file—must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 381; Rule 74.04(e).

■ For purposes of Rule 74.04, a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *ITT Commercial Finance Corp.,* 854 S.W.2d at 382. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382.

■ Appellants (plaintiffs below) based their claim against respondents on the theory of fraudulent concealment or "fraud by silence." Under Missouri law, the elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or his ignorance of the truth; (5) the speaker's intent that the representation should be acted on by the person, and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). Failure to establish any element is fatal to recovery. *Id.*

■ Misrepresentation of a material fact by silence may amount to actionable fraud. *Centerre Bank of Independence, N.A. v. Bliss,* 765 S.W.2d 276, 284 (Mo.App.1988). However, before silence may add up to misrepresentation, the silent party must have a duty to speak, and that duty arises when the silent party is a fiduciary or possesses superior knowledge. *Id.* Thus, concealment of a fact which one has a duty to disclose serves as a substitute element for a false and fraudulent representation in the tort of fraud. *Triggs v. Risinger,* 772 S.W.2d 381, 382 (Mo. App.1989).

■ In the case at bar, appellants contend that respondents represented that full accreditation was expected by 1983, but failed to disclose facts tending to show that full accreditation could not be achieved by 1983. The essence of appellants' argument on appeal is that, having made the statement in their Fall 1980 brochure that NCA accreditation was "expected in 1983," respondents had a duty to disclose to appellants all material facts related to this anticipated accreditation and they failed to do so.

Thus, the controversy here centers around the statement made by respondents in their Fall 1980 brochure regarding NCA accreditation. If there is no showing that appellants even relied on this statement in enrolling or remaining in the joint degree program, then appellants' claim for fraud must fail.

In respondents' motions for summary judgment, Research and Rockhurst contend that appellants did not rely on the statement that NCA accreditation was "expected in 1983" in enrolling or remaining in the joint degree program. Research and Rockhurst

 

both cite to appellants' deposition testimony which supports this contention.

Appellants have failed to show that they relied on the statement made by respondents, and the record refutes this contention. Lack of a material issue of fact in regard to this element of fraud is fatal to appellants' recovery. Because we find that appellants failed to satisfy the reliance element of fraud, we need not address the issue of whether or not respondents had a duty to disclose all material facts related to the anticipated accreditation.

The trial court's granting of summary judgment in favor of respondents Research and Rockhurst is affirmed.

All concur.